[Civ. No. 5707. Fourth Dist. Feb. 21, 1958.]

HAZEL T. PONZI, Appellant, v. ALDO F. PONZI, Respondent.

774

Hennigan, Ryneal & Nixen for Appellant.

Thompson & Colegate and Harry M. Dougherty for Respondent.

MUSSELL, J.—In the first cause of action herein, for separate maintenance, it was alleged that the parties were married in the city of Quartzsite, Arizona, on February 26, 1950; in the second cause of action that they were married during the month of May, 1951, by common law in Tulsa, Oklahoma; and in the third cause of action that they were married by common law in May and June, 1951, in the state of Texas. Inability of plaintiff to support herself was alleged in each cause of action and attorney's fees, costs and an allowance for support were sought. It was further alleged that the parties entered into an agreement on April 16, 1954, wherein defendant agreed to pay certain encumbrances on plaintiff's property, amounting to approximately $5,950.

Defendant filed an answer in which he admitted entering into a marriage ceremony with plaintiff on February 26, 1950, but alleged that the marriage was null and void for the reason that plaintiff was then married to one Joseph Andrew Carmine. Defendant denied that common law marriages were effected in Oklahoma or Texas, as alleged in the complaint. He also filed a cross-complaint in which he stated a cause of action for divorce, alleging that the parties entered into a marriage ceremony in Quartzsite, Arizona, on February 26, 1950, and in a second cause of action he realleged the said Arizona marriage but further alleged that at said time plaintiff Hazel T. Ponzi was married to Joseph Andrew Carmine and that said marriage was in full force and effect and undissolved by decree of divorce, or otherwise. It was further alleged that the parties had acquired since marriage certain property in Sun Valley, California. In the prayer the cross-complainant asked for a divorce or, in the alternative, for an annulment, and that the Sun Valley property be divided equally between the parties.

The trial court found that at the time of the marriage ceremony in Arizona Hazel T. Ponzi was still married to Joseph Andrew Carmine, who was then alive, and that her

marriage to him had not been dissolved by decree of divorce, annulment, death, or otherwise; that Hazel T. Ponzi owns as her separate property certain real property known as 12125 Jerome Street, Sun Valley, California; that on or about April 16, 1954, the parties hereto entered into an agreement under which the defendant and cross-complainant promised to discharge certain encumbrances on the said real property; that the sole purported consideration on the part of the plaintiff for the said agreement was her promise not to contest a divorce action to be brought by the defendant and cross-complainant, and that the agreement was therefore against public policy, lacking in legal consideration and null and void; that no common-law marriage was entered into between the parties in the state of Oklahoma or in the state of Texas; that on or about April 2, 1944, Hazel Ponzi, under the name of Hazel T. Beuschel, entered into a marriage with Joseph Andrew Carmine, also known as Joe Carmine Occhogross, in the state of Texas and that said marriage was not dissolved by a final decree of divorce until August 16, 1950; that at the time cross-complainant participated in said marriage ceremony with Hazel Ponzi, he did so without any knowledge that the cross-defendant was then and there a married woman, being married to Joseph Andrew Carmine, and as such, was not free to marry the cross-complainant.

The court concluded that the marriage ceremony in Quartzsite on February 26, 1950, was of no force and effect and null and void for the reason that Hazel Ponzi was at that time married to Joseph Andrew Carmine, who was then and there alive and that said marriage had not been dissolved by divorce, annulment, death, or otherwise; that the agreement entered into on the 16th day of April, 1954, is invalid, null, and void and of no force and effect for the reason that the said agreement was against public policy and lacking in legal consideration; that no common-law marriage status existed between the parties; and that the plaintiff, Hazel T. Ponzi, is not entitled to any of the relief prayed for in her first amended complaint. Judgment was entered in accordance with these findings and conclusions and plaintiff, Hazel Ponzi, appeals therefrom.

A marriage license was issued to appellant and respondent in Arizona on February 26, 1950, and they entered into a marriage ceremony on that date. Appellant testified that she married Joseph Carmine in Texas on April 2, 1944; that she knew him in 1943 and knew that he had applied for a

divorce. A certified copy of a final judgment of divorce between Carmine Occhogross and Josephine Occhogross, entered by the Superior Court of Los Angeles County on April 5, 1944, was introduced in evidence without objection. The final decree contains the recital that the interlocutory decree therein had been entered on March 29, 1943. In this connection plaintiff testified that Carmine Occhogross named in that document was the same person she married on April 2, 1944. On August 12, 1949, an interlocutory decree of divorce was entered in an action by Hazel T. Carmine (appellant herein) against Joseph Andrew Carmine and a final decree of divorce in that action was filed and entered on August 16, 1950. In this connection appellant testified that when she procured her divorce from Joseph Carmine, she acquired from him, under property settlement agreement, certain property in Sun Valley, California.

Respondent, Aldo F. Ponzi, testified that he met appellant in 1949; that he had never been married before; that appellant told him she had been previously married to Joseph Carmine and that she had divorced him; that at the time of the marriage ceremony in Arizona, he did not know that appellant had not procured her final decree of divorce from Joseph Carmine; that he (Ponzi) had no knowledge of the invalidity of his marriage to appellant until he discussed his domestic problems with an attorney in January or February, 1954.

At the time appellant filed the separate maintenance action herein respondent was a sergeant in the air force, having been called back into service a short time after entering into the Arizona marriage ceremony with appellant. He testified that after meeting appellant they discussed marriage on several occasions; that they decided to drive to Quartzsite, Arizona, to enter into a marriage ceremony; that in May or June, 1951, after being recalled into military service, he was transferred to an air field in Texas; that during this time appellant went to Oklahoma and visited with her mother and sister for a short period, an apartment was rented, and he visited appellant on several week ends. Respondent further testified that he had no intention of establishing his residence in either Oklahoma or Texas; that he intended to maintain his residence at the Sun Valley property, which was the property owned by appellant and in which they resided; that their furniture was kept at that address and also his civilian clothes and personal belongings; that when he entered the

Air Force he was living at 12125 Jerome Street (the Sun Valley property); that he went to Texas and Oklahoma because he was transferred there but that he had no intention of creating a legal residence in either of said states; that when appellant left Texas, she returned to California and to the Sun Valley property.

█ The record conclusively shows that when appellant married the respondent in Quartzsite, Arizona, she had not secured her final decree of divorce from Joseph Andrew Carmine and that he was then living. Under these circumstances, the marriage of appellant and respondent in Arizona was invalid (Civ. Code, § 61), and the trial court's finding to that effect is amply supported by the evidence.

█ Appellant contends that her marriage to respondent was valid, claiming that her marriage to Joseph Andrew Carmine was void and that she was therefore a single person with full capacity to marry the respondent. In support of this contention she relies upon her testimony that Carmine had been previously married to Josephine Occhogross and further relies upon a final decree of divorce between Carmine and Josephine Carmine entered on April 5, 1944. However, no marriage certificate was produced showing Carmine and Josephine were married and appellant testified that she did not know Josephine and had never met her. It is apparent that appellant's statement that Josephine and Carmine were married was based upon statements made to her by Carmine and not from actual knowledge. The final decree of divorce between Carmine and Josephine, entered April 5, 1944, only determined that the parties were thereafter free to remarry as far as their relations to each other were concerned. It did not establish validity of their marriage against respondent herein, who was not a party in that action and had no right to be heard therein. (*Rediker* v. *Rediker*, 35 Cal.2d 796, 801-803 [221 P.2d 1, 20 A.L.R.2d 1152].) The record shows that appellant filed a divorce action against Carmine in February or March, 1947; that she secured an interlocutory decree in that action on August 12, 1949, and a final decree therein on August 16, 1950. It also appears that she acquired the Sun Valley property from Carmine under a property settlement agreement. The trial court's finding that the marriage of appellant and Joseph Carmine was not dissolved by final decree of divorce until August 16, 1950, is supported by the record.

█ Appellant contends that two common law marriages

were established and proved, one in Oklahoma in May, 1951, and the other in Texas in the months of May and June, 1951. We cannot agree with this argument. There was substantial evidence that the respondent herein, during the months of May and June, 1951, retained his home at the Sun Valley property in California; that he had no intention of establishing his residence in Oklahoma or Texas and went to those states because he was transferred there in military service; that he had no knowledge of the invalidity of his marriage to appellant until he discussed his domestic problems with an attorney in January or February, 1954. It is apparent that appellant knew when she married respondent herein that her marriage to him was invalid and that until she obtained her final decree, she was living in a meretricious relationship with respondent.

The California law governs the presumptions and inferences to be drawn from the evidence herein (*Estate of Winder,* 98 Cal.App.2d 78, 84 [219 P.2d 18]), and the adulterous relationship of the parties was presumptively continued after August 16, 1950. (*Burger* v. *Burger,* 136 Cal.App.2d 360, 363 [288 P.2d 926].) In 55 Corpus Juris Secundum, Marriage, section 36, pages 882-883, it is said that

"*Where the relationship was meretricious at its inception,* it will be presumed so to continue, in the absence of evidence to the contrary, and in such case the removal of the disability will be ineffectual to create an informal or common-law marriage, unless a new contract is entered into, and this is particularly true where the parties do not know of the removal of the impediment; ..."

It does not appear from the evidence that the appellant and respondent entered into a new contract or agreement to remarry after the Arizona marriage. While the evidence shows that they lived together as husband and wife, they maintained their residence in California, and there was no discussion between them indicating that they intended to remarry in Texas or Oklahoma or in any other state in which respondent might be temporarily stationed by reason of his military service.

In *Estate of McKanna,* 106 Cal.App.2d 126, 133 [234 P.2d 673], the court said that the law of Texas was that where the contract of marriage is invalid under the law of the state in which it is made, the status of the parties thereto will be regarded as being meretricious and that that status will follow them during any stay in Texas, unless there is a new

agreement of marriage made in Texas, followed by cohabitation and a public holding out, or unless they become domiciled in that state.

In *Burdine* v. *Burdine*, 206 Okla. 170 [242 P.2d 148], the Supreme Court of Oklahoma held that since the parties had entered into what would have been a valid common law marriage except for the fact that defendant was already married to another and since after such impediment was removed by divorce, the parties evidenced an intent to be husband and wife, their conduct and consenting minds validated the common law marriage. However, in *Burger* v. *Burger, supra,* the parties, after entering into a void marriage in Yuma, lived together in Oklahoma and the court held that their living together in Oklahoma where a common law marriage is recognized did not confer upon them the sanctity of marriage; that if they lived together for a year in an adulterous relationship, (until the final decree of divorce was obtained) the same relationship was presumptively continued thereafter.

The question of whether the appellant and respondent were married by common law marriage in Oklahoma and Texas was a question of fact for the determination of the trial court and, under the circumstances shown, we cannot say there was no substantial evidence to support its determination of this question.

Appellant contends that the court erred in refusing to order the property settlement agreement between the parties carried out, solely upon the conception that it was against public policy. The evidence shows in this connection that the parties had discussed divorce proceedings on several occasions; that in April, 1954, the appellant telephoned to respondent and requested that he come to the home in Sun Valley and discuss financial arrangements; that the parties then discussed their financial problems and it was agreed that respondent would pay certain obligations in consideration of which appellant would not contest any divorce action. The following day the parties went to the office of appellant's attorney, where a letter was prepared and which was signed by respondent, and is in part as follows:

"Hazel P. Ponzi,                                   "April 16, 1954.
San Fernando, California.

"Dear Hazel:

"You can use this letter as an Agreement on my part, inasmuch as you are not going to contest my contemplated

divorce, that I, in turn, agree to pay the encumbrance against the property commonly known as 12125 Jerome Street, Sun Valley, California, . . . (description of property) as said encumbrance becomes due. This encumbrance is in the form of a note secured by deed of trust on said property by the San Fernando Valley Savings & Loan Association in the approximate sum of $4,600.00. Also, if you encumber this said property any further for my benefit and/or your benefit and if I consent to said further borrowing I hereby agree to pay the new encumbrance as well as the old encumbrance as it becomes due.

"I again reiterate to make these payments as they become due and my failure to do so is necessary for you to bring legal action against me for said failure, I hereby agree to pay all reasonable attorney's fees and court costs for said action."

The trial court found that this agreement was null and void, against public policy, and lacking in legal consideration. This finding is supported by the record. In *Beard* v. *Beard,* 65 Cal. 354 [4 P. 229], plaintiff transferred real and personal property to defendant in consideration of her executing to him four notes, securing the payment of the same by a mortgage, abandoning her defense in an action of divorce then pending between them, and doing nothing to resist, or prevent, or delay him in obtaining a decree of divorce therein. It was held that the agreement of the wife with respect to the divorce proceedings was a fraud upon the court and, as it constituted an essential and inseparable part of the consideration, the entire transaction became tainted by fraud and no action would lie to enforce the payment of the notes.

In *Hill* v. *Hill,* 23 Cal.2d 82, 87 [142 P.2d 417], the court said:

"Agreements not to defend or to abandon a defense in a divorce action, to destroy or conceal evidence in proceedings for divorce, and to procure or furnish testimony of certain facts which will successfully support or defeat a divorce action, or which provide that payment to the party procuring evidence to be used in such an action is contingent upon the result of the action have been held void as parts of collusive arrangements to facilitate divorce." (Citing many cases, including *Beard* v. *Beard, supra.*)

In *Brown* v. *Brown,* 8 Cal.App.2d 364, 367 [47 P.2d 352], it is said that

"Where a husband and wife agree that a divorce shall be obtained by one or the other, and adjust their affairs in

contemplation of a divorce by entering into a settlement conditioned thereon, of their property rights and make promises of an executory nature pertaining thereto, and such facts are established in a subsequent action on the contract, they have no right to receive the aid of the court in the enforcement of their agreement, which the law condemns as a violation of the policy of the state.''

We find no prejudicial error in the trial court's refusal to enforce the agreement involved.

■ The clerk's transcript herein shows that a motion for a new trial was made and that at the hearing thereon a judgment of annulment in an action between Hazel T. Carmine and Joseph Carmine was considered by the trial court. The motion was denied. However, the grounds for the denial were not stated. It is apparent that the respondent was not a party to the annulment action and that the judgment therein was entered on November 9, 1955, and that prior thereto appellant had secured a final judgment of divorce from said Joseph Carmine. ■ All presumptions are in favor of the trial court's order in denying the motion for a new trial and an appellate court will not interfere with its action unless a manifest and unmistakable abuse of discretion is shown and the order will be affirmed if it may be sustained on any ground. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338].) ■ We have examined the affidavits and the files used on the motion for a new trial and find no abuse of discretion in the order made.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.