[L. A. No. 19067. In Bank. Dec. 27, 1944.]

JOSEPH ROMAN YBARRA, Appellant, v. LAWRENCE C. SPANGARD et al., Respondents.

Marion P. Betty and Wycoff Westover for Appellant.

Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury and Vernon W. Hunt for Respondents.

GIBSON, C. J.—This is an action for damages for personal injuries alleged to have been inflicted on plaintiff by defendants during the course of a surgical operation. The trial court entered judgments of nonsuit as to all defendants and plaintiff appealed.

On October 28, 1939, plaintiff consulted defendant Dr. Tilley, who diagnosed his ailment as appendicitis, and made arrangements for an appendectomy to be performed by defendant Dr. Spangard at a hospital owned and managed by defendant Dr. Swift. Plaintiff entered the hospital, was given a hypodermic injection, slept, and later was awakened by Doctors Tilley and Spangard and wheeled into the operating room by a nurse whom he believed to be defendant Gisler, an employee of Dr. Swift. Defendant Dr. Reser, the anesthetist, also an employee of Dr. Swift, adjusted plaintiff for

the operation, pulling his body to the head of the operating table and, according to plaintiff's testimony, laying him back against two hard objects at the top of his shoulders, about an inch below his neck. Dr. Reser then administered the anesthetic and plaintiff lost consciousness. When he awoke early the following morning he was in his hospital room attended by defendant Thompson, the special nurse, and another nurse who was not made a defendant.

Plaintiff testified that prior to the operation he had never had any pain in, or injury to, his right arm or shoulder, but that when he awakened he felt a sharp pain about half way between the neck and the point of the right shoulder. He complained to the nurse, and then to Dr. Tilley, who gave him diathermy treatments while he remained in the hospital. The pain did not cease, but spread down to the lower part of his arm, and after his release from the hospital the condition grew worse. He was unable to rotate or lift his arm, and developed paralysis and atrophy of the muscles around the shoulder. He received further treatments from Dr. Tilley until March, 1940, and then returned to work, wearing his arm in a splint on the advice of Dr. Spangard.

Plaintiff also consulted Dr. Wilfred Sterling Clark, who had X-ray pictures taken which showed an area of diminished sensation below the shoulder and atrophy and wasting away of the muscles around the shoulder. In the opinion of Dr. Clark, plaintiff's condition was due to trauma or injury by pressure or strain, applied between his right shoulder and neck.

Plaintiff was also examined by Dr. Fernando Garduno, who expressed the opinion that plaintiff's injury was a paralysis of traumatic origin, not arising from pathological causes, and not systemic, and that the injury resulted in atrophy, loss of use and restriction of motion of the right arm and shoulder.

Plaintiff's theory is that the foregoing evidence presents a proper case for the application of the doctrine of res ipsa loquitur, and that the inference of negligence arising therefrom makes the granting of a nonsuit improper. Defendants take the position that, assuming that plaintiff's condition was in fact the result of an injury, there is no showing that the act of any particular defendant, nor any particular instrumentality, was the cause thereof. They attack plaintiff's

action as an attempt to fix liability "en masse" on various defendants, some of whom were not responsible for the acts of others; and they further point to the failure to show which defendants had control of the instrumentalities that may have been involved. Their main defense may be briefly stated in two propositions: (1) that where there are several defendants, and there is a division of responsibility in the use of an instrumentality causing the injury, and the injury might have resulted from the separate act of either one of two or more persons, the rule of res ipsa loquitur cannot be invoked against any one of them; and (2) that where there are several instrumentalities, and no showing is made as to which caused the injury or as to the particular defendant in control of it, the doctrine cannot apply. We are satisfied, however, that these objections are not well taken in the circumstances of this case.

■ The doctrine of res ipsa loquitur has three conditions: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." (Prosser, Torts, p. 295.) It is applied in a wide variety of situations, including cases of medical or dental treatment and hospital care. (*Ales* v. *Ryan*, 8 Cal. 2d 82 [64 P.2d 409]; *Brown* v. *Shortlidge*, 98 Cal.App. 352 [277 P. 134]; *Moore* v. *Steen*, 102 Cal.App. 723 [283 P. 833]; *Armstrong* v. *Wallace*, 8 Cal.App.2d 429 [47 P.2d 740]; *Meyer* v. *McNutt Hospital*, 173 Cal. 156 [159 P. 436]; *Vergeldt* v. *Hartzell*, 1 F.2d 633; *Maki* v. *Murray Hospital*, 91 Mont. 251 [7 P.2d 228]; *Whetstine* v. *Moravec*, 228 Iowa 352 [291 N.W. 425]; see Shain, *Res Ipsa Loquitur*, 17 So.Cal.L. Rev. 187, 196.)

There is, however, some uncertainty as to the extent to which res ipsa loquitur may be invoked in cases of injury from medical treatment. This is in part due to the tendency, in some decisions, to lay undue emphasis on the limitations of the doctrine, and to give too little attention to its basic underlying purpose. The result has been that a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience, has occasionally been transformed into a rigid legal formula, which

arbitrarily precludes its application in many cases where it is most important that it should be applied. If the doctrine is to continue to serve a useful purpose, we should not forget that "the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person." (9 Wigmore, Evidence [3d ed.], § 2509, p. 382; see, also, *Whetstine* v. *Moravec,* 228 Iowa 352 [291 N.W. 425, 432]; *Ross* v. *Double Shoals Cotton Mills,* 140 N.C. 115 [52 S.E. 121; 1 L.R.A.N.S. 298]; *Maki* v. *Murray Hospital,* 91 Mont. 251 [7 P.2d 228, 231].) In the last-named case, where an unconscious patient in a hospital received injuries from a fall, the court declared that without the doctrine the maxim that for every wrong there is a remedy would be rendered nugatory, "by denying one, patently entitled to damages, satisfaction merely because he is ignorant of facts peculiarly within the knowledge of the party who should, in all justice, pay them."

The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. The passenger sitting awake in a railroad car at the time of a collision, the pedestrian walking along the street and struck by a falling object or the debris of an explosion, are surely not more entitled to an explanation than the unconscious patient on the operating table. Viewed from this aspect, it is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability. (See *Maki* v. *Murray Hospital,* 91 Mont. 251 [7 P.2d 228].) If this were the state of the law of negligence, the courts, to avoid gross injustice, would be forced to invoke the principles of absolute liability, irrespective of negligence, in actions by persons suffering in-

juries during the course of treatment under anesthesia. But we think this juncture has not yet been reached, and that the doctrine of res ipsa loquitur is properly applicable to the case before us.

The condition that the injury must not have been due to the plaintiff's voluntary action is of course fully satisfied under the evidence produced herein; and the same is true of the condition that the accident must be one which ordinarily does not occur unless someone was negligent. We have here no problem of negligence in treatment, but of distinct injury to a healthy part of the body not the subject of treatment, nor within the area covered by the operation. The decisions in this state make it clear that such circumstances raise the inference of negligence, and call upon the defendant to explain the unusual result. (See *Ales* v. *Ryan*, 8 Cal.2d 82 [64 P.2d 409]; *Brown* v. *Shortlidge*, 98 Cal.App. 352 [277 P. 134].)

The argument of defendants is simply that plaintiff has not shown an injury caused by an instrumentality under a defendant's control, because he has not shown which of the several instrumentalities that he came in contact with while in the hospital caused the injury; and he has not shown that any one defendant or his servants had exclusive control over any particular instrumentality. Defendants assert that some of them were not the employees of other defendants, that some did not stand in any permanent relationship from which liability in tort would follow, and that in view of the nature of the injury, the number of defendants and the different functions performed by each, they could not all be liable for the wrong, if any.

We have no doubt that in a modern hospital a patient is quite likely to come under the care of a number of persons in different types of contractual and other relationships with each other. For example, in the present case it appears that Doctors Smith, Spangard and Tilley were physicians or surgeons commonly placed in the legal category of independent contractors; and Dr. Reser, the anesthetist, and defendant Thompson, the special nurse, were employees of Dr. Swift and not of the other doctors. But we do not believe that either the number or relationship of the defendants alone determines whether the doctrine of res ipsa loquitur applies. ▮ Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for

failure in this regard. Any defendant who negligently injured him, and any defendant charged with his care who so neglected him as to allow injury to occur, would be liable. The defendant employers would be liable for the neglect of their employees; and the doctor in charge of the operation would be liable for the negligence of those who became his temporary servants for the purpose of assisting in the operation.

In this connection, it should be noted that while the assisting physicians and nurses may be employed by the hospital, or engaged by the patient, they normally become the temporary servants or agents of the surgeon in charge while the operation is in progress, and liability may be imposed upon him for their negligent acts under the doctrine of *respondeat superior*. Thus a surgeon has been held liable for the negligence of an assisting nurse who leaves a sponge or other object inside a patient, and the fact that the duty of seeing that such mistakes do not occur is delegated to others does not absolve the doctor from responsibility for their negligence. (See *Ales* v. *Ryan*, 8 Cal.2d 82 [64 P.2d 409]; *Armstrong* v. *Wallace*, 8 Cal.App.2d 429 [47 P.2d 740]; *Ault* v. *Hall*, 119 Ohio St. 422 [164 N.E. 518, 60 A.L.R. 128]; and see, also, *Maki* v. *Murray Hospital*, 91 Mont. 251 [7 P.2d 228, 233].)

It may appear at the trial that, consistent with the principles outlined above, one or more defendants will be found liable and others absolved, but this should not preclude the application of the rule of res ipsa loquitur. The control, at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation. Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that he identify any one of them as the person who did the alleged negligent act.

The other aspect of the case which defendants so strongly emphasize is that plaintiff has not identified the instrumentality any more than he has the particular guilty defendant. Here, again, there is a misconception which, if carried to the extreme for which defendants contend, would unreasonably limit the application of the res ipsa loquitur rule. It should be enough that the plaintiff can show an injury resulting

from an external force applied while he lay unconscious in the hospital; this is as clear a case of identification of the instrumentality as the plaintiff may ever be able to make.

An examination of the recent cases, particularly in this state, discloses that the test of actual exclusive control of an instrumentality has not been strictly followed, but exceptions have been recognized where the purpose of the doctrine of res ipsa loquitur would otherwise be defeated. Thus, the test has become one of right of control rather than actual control. (See *Metz* v. *Southern Pac. Co.*, 51 Cal.App.2d 260, 268 [124 P.2d 670].) In the bursting bottle cases where the bottler has delivered the instrumentality to a retailer and thus has given up actual control, he will nevertheless be subject to the doctrine where it is shown that no change in the condition of the bottle occurred after it left the bottler's possession, and it can accordingly be said that he was in constructive control. (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436].) Moreover, this court departed from the single instrumentality theory in the colliding vehicle cases, where two defendants were involved, each in control of a separate vehicle. (See *Smith* v. *O'Donnell*, 215 Cal. 714 [12 P. 2d 933]; *Godfrey* v. *Brown*, 220 Cal. 57 [29 P.2d 165, 93 A.L.R. 1072]; Carpenter, 10 So.Cal.L.Rev. 170.) Finally, it has been suggested that the hospital cases may properly be considered exceptional, and that the doctrine of res ipsa loquitur "should apply with equal force in cases wherein medical and nursing staffs take the place of machinery and may, through carelessness or lack of skill, inflict, or permit the infliction of, injury upon a patient who is thereafter in no position to say how he received his injuries." (*Maki* v. *Murray Hospital*, 91 Mont. 251 [7 P.2d 228, 231]; see, also, *Whetstine* v. *Moravec*, 228 Iowa 352 [291 N.W. 425, 435], where the court refers to the "instrumentalities" as including "the unconscious body of the plaintiff.")

In the face of these examples of liberalization of the tests for res ipsa loquitur, there can be no justification for the rejection of the doctrine in the instant case. As pointed out above, if we accept the contention of defendants herein, there will rarely be any compensation for patients injured while unconscious. A hospital today conducts a highly integrated system of activities, with many persons contributing their efforts. There may be, e. g., preparation for surgery by nurses

and internes who are employees of the hospital; administering of an anesthetic by a doctor who may be an employee of the hospital, an employee of the operating surgeon, or an independent contractor; performance of an operation by a surgeon and assistants who may be his employees, employees of the hospital, or independent contractors; and post surgical care by the surgeon, a hospital physician, and nurses. The number of those in whose care the patient is placed is not a good reason for denying him all reasonable opportunity to recover for negligent harm. It is rather a good reason for re-examination of the statement of legal theories which supposedly compel such a shocking result.

We do not at this time undertake to state the extent to which the reasoning of this case may be applied to other situations in which the doctrine of res ipsa loquitur is invoked. We merely hold that where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct.

The judgment is reversed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

Respondents' petition for a rehearing was denied January 25, 1945. Traynor, J., voted for a rehearing.