[Civ. No. 20843.   Second Dist., Div. Two.   Oct. 18, 1955.]

BENNY B. BURGER et al., Respondents, v. MAXINE BURGER, Appellant.

Dryden, Harrington, Horgan & Swartz for Appellant.

Theodore E. Bowen and Reginald L. Dyer for Respondents.

MOORE, P. J.—Maxine Burger operated a restaurant in Sun Valley, which lies within Los Angeles. The property was leased to her by its owner, H. W. Peavler. On August 13, 1951, she attempted to remove the asphalt tile from her kitchen floor. After she had succeeded with tools in clearing out the tile, it was necessary to clean a tarry substance from the concrete. Cleansers having failed, she applied gasoline; first one gallon, then two. Her father, Dee Harper, and her intimate, Benny Burger, entered the kitchen while the volatile fluid was on the floor. At 4 p. m. an explosion occurred. Dee Harper was killed; Benny was severely burned and suffered incurable injuries. The widow, Mamie Harper, joined Benny in this action to recover damages from Maxine and the estate of her landlord, H. W. Peavler. Upon the two verdicts returned for the two plaintiffs, a judgment was entered against both defendants, Maxine Burger and the Peavler estate, for $10,000, and a second judgment against both defendants in favor of Benny Burger for $6,500. On the hearing of the motion for a new trial, the judgments against Ann Stewart, executrix of the estate of Peavler, were set aside. Maxine has appealed from both judgments on the grounds about to be explored.

## I.

The complaint does state a cause of action in favor of each plaintiff. The names of the parties litigant, the act of negligence on the part of defendants, the injuries suffered by virtue of such negligence, the extent of damage and its value, the nature of the event caused by such negligence, the relationship of plaintiffs and defendants at the scene of the accident, to wit, invitor and invitee—such facts were alleged in logical order. Such allegations state a cause of action against each defendant and in favor of the two plaintiffs. ▮ Moreover, the trial proceeded upon the assumption that a cause was stated on behalf of each plaintiff and the witnesses were examined and cross-examined with a view to proving or defeating the causes alleged. Not only was no objection made that was based upon the invalidity of the complaint, but she emphasized the issues by her affirmative defenses and at the trial, contended that she was not negligent; offered instructions in support of her theories; offered evidence of knowledge on the part of respondents as to the presence of the gasoline and resisted offers of evidence and instructions. Such behavior estops her from complaining of the inadequacy of the pleading. (Code Civ. Proc., § 590; *McAllister* v. *Union*

*Indem. Co.,* 2 Cal.2d 457, 460 [42 P.2d 305].) Also, the issues were emphasized.

## II.

The relationship of Benny Burger and Maxine Burger as husband and wife was not established. Of course, the proof of such union would be fatal to Benny's claim. But, pursuant to the stipulation of the parties, and the law (1 C.J. 276, 605), the court determined that issue and its instruction to the jury was in accordance therewith. Appellant now maintains that the court's finding was contrary to law. On June 18, 1948, Maxine obtained an interlocutory decree of divorce from Carl Hermanns. Forthwith, she and Benny Burger journeyed to Yuma, Arizona, where on June 20 they celebrated a ceremonial marriage. Thence, they proceeded to Oklahoma where they lived for a year as husband and wife. About July 8, 1949, Maxine received her final decree and continued to live in Oklahoma, openly, with Benny as his wife until about August 1 when they returned to Los Angeles. Judge Willis' finding was that the marriage at Yuma was void; that their living together in Oklahoma where the common-law marriage is recognized, did not confer upon them the sanctity of wedlock; that Benny and Maxine at no time executed an agreement of marriage; that no evidence was introduced that a common-law marriage ever came into existence; that to the day of the accident they considered themselves married by virtue of the ceremony at Yuma in 1948, and "continued to live together and introduced each other as husband or wife, solely by virtue of such ceremony without a peep of a common-law marriage"; that therefore, "as far as the marital relations and obligations are concerned, they are strangers to each other, bearing a similar name only and living together in . . . a meritricious relationship."

Since Maxine had no legal capacity to contract a marriage for a year after June 18, 1948, their living together during that period is not proof of a common-law marriage. If they lived together for a year in an adulterous relationship, the same relationship was presumptively continued after July 9, 1949, especially in view of their reliance upon the legality of the ceremony at Yuma.

Appellant contends that where a second marriage is contracted in good faith, where one of them has obtained only an interlocutory decree and the parties continue to cohabit without change during the period of the interlocutory decree,

this relationship ripens into a common-law marriage, citing *Mantz* v. *Gill*, 147 Okla. 199 [296 P. 441]; *Hess* v. *Hess*, 198 Okla. 130 [176 P.2d 804, 805]. Such authorities declare the law of Oklahoma, not of California. Also, appellant insists that respondent Benny is estopped to deny the validity of the marriage, citing *Rediker* v. *Rediker*, 35 Cal.2d 796, 805 [221 P.2d 1, 20 A.L.R.2d 1152]. Such estoppel was not pleaded. Moreover, he did not procure Maxine's divorce nor was he a party to her action. She was at no time misled by the acts of Benny with reference to the alleged common-law marriage. She pleaded no common-law marriage, but relied only upon the empty, void ceremonial at Yuma.

### III.

The evidence amply warrants the judgments for both plaintiffs. Appellant argues that Mrs. Harper's husband was in the kitchen at the time of the explosion, knew the gasoline was there, assumed the risk and was violating the city ordinance that forbade the use of gasoline under the circumstances. ▆ But there is no evidence that he knew the floor was being cleaned with gasoline. In the absence of such evidence, the presumption that he used ordinary care must prevail. (*Chambers* v. *Spada*, 133 Cal.App.2d 231, 234 [283 P.2d 1067].) At any rate, the jury was privileged to find in accordance with the presumption and against the testimony of Mrs. Perry who was not on appellant's premises the day of the explosion prior to the fire. While she testified that at her café, Maxine said in the presence of Mr. Harper that she was cleaning the *Front Page Kitchen* with gasoline, the jury was not obliged to believe her testimony as against the presumption that Mr. Harper exercised reasonable care to protect himself.

### IV.

Appellant contends that the instruction on res ipsa loquitur was prejudicial.[1] The instruction is taken from BAJI, 206-B,

---

[1] "From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that he did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on his part."

and was approved in *Hinds* v. *Wheadon*, 67 Cal.App.2d 456, 466 [154 P.2d 720]. No good reason is suggested why the rule should not apply to explosions. Indeed, its application to the explosion of a boiler was approved in *Judson* v. *Giant Powder Co.*, 107 Cal. 549, 557, 562 [40 P. 1020, 48 Am.St. Rep. 146, 29 L.R.A. 718]. There is nothing in *Raber* v. *Tumin*, 36 Cal.2d 654 [226 P.2d 574], or in *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], to the contrary. The latter decision merely quotes Professor Prosser on the three conditions which must occur to make the doctrine applicable.[2] ■ The cleaning of her kitchen floor by appellant does not ordinarily cause injury, in the absence of negligence. The gasoline was under appellant's exclusive control. Respondents did nothing to contribute to the accident. Clearly, the instruction was proper. (See *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344]; *Judson* v. *Giant Powder Co.*, *supra*; *Borrow* v. *El Dorado Lodge*, 75 Ariz. 139 [252 P.2d 791, 794]; *Harding* v. *Johnson, Inc.*, 126 Mont. 70 [244 P.2d 111, 117].) **[5]** The doctrine of res ipsa loquitur may be invoked "where the accident is of such a nature that it can be said, in the light of past experience that it was probably the result of someone's negligence and that the defendant is probably the responsible party." (*Knell* v. *Morris*, 39 Cal.2d 450, 453 [247 P.2d 352, 353].)

## V.

■ The court correctly declined to give the instruction[3] offered by appellant with reference to her duty to invitees.

---

[2]The accident must be one which does not occur in the absence of negligence; it must be caused by an agency within the exclusive control of the defendant; it must not have been due to any voluntary action of the plaintiff.

[3]"Toward an invitee, he (she) who extended (those who joined in) the invitation, express or implied, (is) (are) obliged to refrain from active negligence and to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee (and for any chattels brought to the premises by him (her) in the reasonable pursuit of a purpose embraced within the invitation).

"But the responsibility of one having control of the premises is not absolute; it is not that of an insurer. If there is danger attending upon the entry, or upon the work which the invitee is to do on the premises, and if such danger arises from conditions not readily apparent to the senses, and if the owner (occupant) has actual knowledge of them, or if they are discoverable by him (her) (it) in the exercise of ordinary care, it is his (her) (its) duty to give reasonable warning of such danger to the invitee. The owner (occupant) is not bound to discover defects which reasonable inspection would not disclose, and he (she) (it) is entitled to assume that the invitee will perceive that which would be

To give it would have been to repeat what the court had adequately declared by other instructions with reference to the rights of invitees and licensees, the duties of the owner or occupant, the overt act, refraining from intentional harm, ordinary care, assumption of risk, dangerous conditions; knowledge of dangers and contributory negligence. The offered instruction would have contributed nothing additionally to the enlightenment of the jury. Neither do the authorities cited by appellant: *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 P. 76]; *Walker* v. *Greenberger*, 63 Cal.App.2d 457 [147 P.2d 105]; *Reagh* v. *San Francisco Unified Sch. Dist.*, 119 Cal.App.2d 65 [259 P.2d 43]. In the first two, the invitee could see the danger of the surface of the floor; the third merely states the general law. There was no satisfactory evidence that Mr. Harper knew that gasoline was being used to clean the floor. The jury preferred to accept the explanation of the brown spots on his shirt rather than to infer that they were tar stains acquired at appellant's kitchen.

██ Appellant assigns as prejudicial the court's instruction on the city ordinance governing the uses of inflammable liquids.[4] She maintains that the portion which declares a

---

obvious to him (her) upon the ordinary use of his (her) own senses. In brief, there is no duty to give the invitee notice of an obvious danger.

"In the absence of appearances that caution him (her), or would caution a reasonably prudent person in like position, to the contrary, the invitee has a right to assume that the premises he (she) was invited to enter are reasonably safe for the purposes for which the invitation was extended, and to act on that assumption.

"Each, the invitee and the invitor, so long as he is exercising ordinary care and no circumstance exists that either causes him or would cause a reasonably prudent person in his position to think differently, has a right to assume that the other is or will be possessed of normal faculties of sight and hearing and will exercise ordinary care, and has the right to rely on that assumption."

[4]"You are instructed that Ordinance No. 96,947, also known as Sec. 57.46 of the Los Angeles Municipal Code, reads as follows:

" '(7) Restricted Uses. Flammable liquids or solutions having a flash point at or below 100 degrees Fahrenheit shall not be used for any of the following purposes:

" '(a) Cleaning drapes, clothing, bedding, or any similar material, except in a commercial dry cleaning or spotting plant approved by the State Fire Marshal.

" '(b) Cleaning, waxing or polishing floors, walls, furniture, stoves, or any similar surfaces, furnishings or equipment.

" '(c) Insecticide sprays, rodent extermination or fumigation except on written approval of the Chief.'

"Conduct which is in violation of said Ordinance No. 96,947 just read to you constitutes negligence *per se*. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he or she was negligent. However, such

violation of the ordinance constitutes negligence as a matter of law is erroneous and that the instruction is confusing. The instruction was correct. (*Clinkscales* v. *Carver*, 22 Cal. 2d 72, 75 [136 P.2d 777] ; *Turkovich* v. *Rowland*, 106 Cal. App.2d 445, 448 [235 P.2d 123] ; *Taylor* v. *Sims*, 72 Cal.App. 2d 60, 63 [164 P.2d 17] ; B.A.J.I. 149-A.) In the absence of a showing that appellant was justified in using gasoline, her violation of the ordinance was negligence *per se.* The statement in the first part of the instruction that the presumption of negligence might be overcome by other evidence, that her conduct was excusable, does not contradict the later declaration that her conduct was negligence ''as a matter of law.''

There was no reason for instructing that Harper could have been violating the ordinance. There was no evidence that he did, while he is presumed not to have done so. The instructions given on contributory negligence and assumption of risk by Harper met all requirements with reference to the municipal ordinance.

### VII.

■ Appellant contends that the reading of the reasons set forth in an emergency clause of the ordinance constitutes prejudicial error. She asserts that such reasons ''purported to give a summary of a number of accidents caused by the use of certain hazardous, inflammable liquids for home dry-cleaning within an unspecified fifteen months' period.'' For two reasons such contention is rejected: (1) The ordinance was read without objection; (2) the reasons were a part of the ordinance. In *Riesman* v. *Los Angeles City Sch. Dist.,* 123 Cal.App.2d 493 [267 P.2d 36], cited by appellant, a report of investigators was read into evidence over the objection by the plaintiff; also it was not a part of the ordinance.

■ Appellant assigns the denial of her motion for a new trial as prejudicial. Her affidavit in support of the motion says that after the trial she learned from Mrs. Peavler for

presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him without moral fault, to do otherwise.

''If you should find from the evidence that a party to this action conducted himself in violation of the ordinance of the City of Los Angeles just read to you, you are instructed that such conduct constituted negligence as a matter of law.''

the first time that respondent Burger, during his convalescence "admitted that he had been cleaning the floor with gasoline in the kitchen for ten minutes prior to the explosion." Such affidavit displays no showing of due diligence. Also, the trial court had heard the direct testimony of respondent Burger with reference to his presence at the restaurant preceding the explosion. It contradicted the alleged statement of Mrs. Peavler as averred by appellant. The trial court decided against the motion. Mrs. Peavler sat in court during Benny Burger's testimony. Appellant's only excuse for not calling the lady to the stand was that extraneous matters distracted her lawyer's attention "from the vital issues in this case." No rule is more impregnably fixed than that the trial court is vested with a sound legal discretion to decide a motion for a new trial and that a reversal of such order can be justified solely by a showing from the record that such discretion was abused. (*James* v. *Oakland Traction Co.*, 10 Cal.App. 785, 802 [103 P. 1082].) Certainly, the court's discretion was not abused where there was not due diligence in producing the allegedly newly discovered evidence.

Judgments affirmed.

McComb, J., and Fox, J., concurred.