[Civ. No. 20270. First Dist., Div. One. Feb. 8, 1963.]

RODDISCRAFT, INC., et al., Plaintiffs and Respondents, v. SKELTON LOGGING COMPANY, Defendant and Appellant.

Hill & Hill, Arthur W. Hill and Robert Dunaway for Defendant and Appellant.

Rader & Truitt and Richard E. Rader for Plaintiffs and Respondents.

MOLINARI, J.—This is an appeal by the defendant from an order of the trial court granting plaintiffs' motion for a new trial, following a jury verdict for the defendant, on the ground that the court had erred in refusing plaintiffs' requested instructions on res ipsa loquitur. The requested instructions were substantially in the form of BAJI No. 206 (revised) and BAJI No. 206-A (revised).

### Question Presented

The sole question presented on appeal is whether the trial court committed prejudicial error in refusing to instruct on the doctrine of res ipsa loquitur.

### The Record

The plaintiffs are: Roddiscraft, Inc., a corporation (hereinafter sometimes called Roddiscraft), Timber Products Company, a corporation (hereinafter sometimes called Products Company), and Ted and Bill Boak, doing business as Ted and Bill Boak Logging Company, a copartnership (hereinafter sometimes called Boak). The defendant is Skelton Logging Company, a corporation (hereinafter sometimes called Skelton). Roddiscraft and Products Company are owners of timber land. Boak is a contract logger. Skelton is both a logger and an owner of timber land.

On August 16, 1958, a forest fire occurred in the Bald Hills area of Humboldt County in California. The said fire destroyed timber on the lands of Roddiscraft and Products Company, and equipment and other personal property belonging to Boak and located on the Roddiscraft land. The damages allegedly caused by said fire are the subject of the present action brought by these plaintiffs against Skelton upon allegations in the complaint which charge the latter with negligently and unlawfully starting the fire and negligently and unlawfully permitting it to escape from its land.

The Skelton land is adjacent and to the east of the Roddiscraft property. On the day of the fire Boak was engaged in logging on the Roddiscraft property, and Skelton was conducting logging operations on its property. Skelton's operations consisted of logging timbers from the easterly side of a

canyon which sloped down towards the Roddiscraft property. The logs which were felled by Skelton were dragged by caterpillar tractors along "cat roads" which led down the canyon to a "main cat road" which in turn led to a "landing," where the logs were then loaded on trucks. The said "landing" was located on the floor of the canyon approximately 500 feet from the Roddiscraft boundary. The "main cat road" is approximately 100 feet from the Roddiscraft property at its nearest point. On the day in question two caterpillar tractors were being used by Skelton in this operation. One of these tractors emitted excessive smoke from its exhaust stack. This stack was not equipped with a spark arrester.[1] Kenneth Skelton, an officer and employee of defendant, Skelton, testified that the said tractor did not throw off sparks. The operator of the tractor testified, however, that while he was using the tractor during the fire fighting efforts he observed sparks being emitted from the exhaust.

There was no testimony that any person saw the fire start. It was first noticed at approximately 11:30 a.m. The fire originated in the canyon above referred to and in close proximity to the boundary between the Roddiscraft and Skelton lands. There is a dispute as to the exact point at which the fire originated. Ted Boak, and two of his employees (Glenn Easter and Don Metcalf), testified that they first observed the fire from Boak's "landing," approximately 750 feet away, and that it then was confined to a small hollow immediately adjacent to Skelton's main cat road at a location close to the boundary line between the two properties on Skelton's side, and near the point where a creek running through the Skelton property crosses over into the Roddiscraft property. Forester Cirabelani, a fire-fighting foreman, testified that he arrived at Boak's "landing" at about 12:30 p.m. and that at that

[1]Section 4167 of the Public Resources Code in effect at the time of the fire in question provided: "No person, copartnership, firm, corporation, or company shall use or operate in, on, or within one-half mile of any forest, brush, grass or grain covered land between April 15th and December 1st of any year, or during such other times of the year and in such areas when unusual fire hazard conditions are declared to exist by proclamation issued by the Director of Natural Resources, pursuant to Section 4153, any engine. machine, equipment or any steam, oil or gasoline operated stationary or mobile equipment from which a spark or fire may originate unless such equipment is provided with an effective device or spark arrester attached to the exhaust pipe which will prevent the escape of fire or sparks. For the purposes of this section, any motor vehicle equipped with a muffler as required by the Vehicle Code shall be deemed to be in compliance with this section. . . ." (Stats. 1955, ch. 1449, p. 2637.)

time the fire was moving southerly along the Skelton side of the canyon and that there was no fire whatsoever on the "Boak" side. Forester Doerner, another fire-fighting foreman, testified that he arrived at Boak's "landing" at 12 noon and that the fire was all on the Skelton side and had not burned down to the creek bottom. Forester Ryder, Assistant Forest Ranger and Fire Boss for this fire, testified that he arrived at Boak's "landing" at noon; that the fire was spreading rapidly up and along the Skelton side, and that there was no fire on the Boak side of the creek. These three forest rangers were called as witnesses for the plaintiffs. Three of Skelton's employees, DeRossett, Persson, and Ludtke, gave testimony tending to place the origin of the fire on the Roddiscraft property. DeRossett placed the fire's origin on the west side of the creek at a point 40 to 50 feet from the main "cat road." Persson placed the start of the fire on the west side of the creek about 50 feet from said road. Ludtke testified that when he first saw the fire it was on "the opposite side" of the creek. Ludtke identified a stump in relation to where he saw the fire, and stated that a few days later he went there with Jack Sheppard, an engineer, and drove a stake at that point. Sheppard, an engineer and surveyor, testified that after the fire he placed a stake where Ludtke told him he had first seen the fire; and that he thereupon fixed the point of the fire's origin on the Boak and west side of the creek and 31 feet from the Skelton property line. Ludtke also testified that, other than employees of the defendant, he did not see anyone in the area on the day of the fire. There was also testimony that all of Boak's men were, on that day, working at Boak's landing, approximately 742 feet away from the area in which the fire started.

Expert testimony was presented by the plaintiffs to the effect that forest fires may be caused by lightning, power lines, discarded matches and cigarettes, children with matches, arsonists, powder used for blowing chocker holes, railroad engines, internal combustion engines without spark arresters, loggers' "donkeys" and chain saws. One of such experts, George Ryder, testified that in his opinion, based upon a hypothetical question, the fire was caused by the tractor which did not have a spark arrester and which on the day of the fire was observed throwing sparks from its exhaust stack. This witness testified, however, that in his opinion sparks from the exhaust of such a tractor are emitted at a speed of approximately 80 miles per hour and could carry from 25 to

30 feet, but that this was not a maximum; that the carry depended on the size of the particles and the topography, and that "[i]f it was downhill it would go far." Ryder also stated that as sparks come out of the exhaust they are "hot" —in excess of 1,500° F. Six expert witnesses presented by Skelton testified, on the other hand, that they either had never seen or heard of a fire start from the exhaust of "a Cat" or that such sparks could not start a fire. Several of these witnesses testified that their opinion would be the same irrespective of the existence or nonexistence of a spark arrester.[2]

## Res Ipsa Loquitur

The doctrine of res ipsa loquitur is now firmly ingrained in California negligence law. ██ Stripped of its Latinity, res ipsa loquitur is a rule of law which authorizes an inference of negligence in the absence of a showing to the contrary. (*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 440 [247 P.2d 344]; Witkin, Cal. Evidence, § 62, p. 81; § 74, p. 96; § 77, p. 99.) Its effect, where applicable, is to declare that from the happening of the accident in question an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 436 [260 P.2d 63]; *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 688 [268 P.2d 1041]; *Leonard* v. *Watsonville Community Hosp.*, 47 Cal.2d 509, 514 [305 P.2d 36].) ██ Before the doctrine may be applied, however, the following requisite conditions must be met: (a) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (b) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (c) it must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Seneris* v. *Haas*, 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124]; *Wolfsmith* v. *Marsh*, 51 Cal. 2d 832, 835 [337 P.2d 70].) When these basic conditions exist the rule of res ipsa loquitur comes into play and an inference of negligence on the part of the defendant is raised. (*Kite* v. *Coastal Oil Co.*, 162 Cal.App.2d 336, 344 [328 P.2d 45]; *Baker* v. *B. F. Goodrich Co.*, 115 Cal.App.2d 221, 229 [252 P.2d 24].)

██ The existence of the conditions upon which the doc-

[2]Other evidence or testimony will be hereafter alluded to where pertinent.

trine is predicated is usually a question of fact. (*Seneris* v. *Haas, supra,* p. 827.) Accordingly, where the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur is present. (*Baker* v. *B. F. Goodrich, supra,* p. 229; *Roberts* v. *Bank of America,* 97 Cal.App.2d 133, 137 [217 P.2d 129].) ▮ It should be noted, however, that one or more of the three conditions may under the particular circumstances of the case exist as a matter of law. (See *Kite* v. *Coastal Oil Co., supra,* 162 Cal.App.2d 336, 344.) Where there is no issue of fact as to the existence of *any* of these conditions, the application of res ipsa loquitur is compelled as a matter of law, and the court is thereupon called upon to direct the jury to draw the inference of negligence. (*Di Mare* v. *Cresci,* 58 Cal.2d 292, 300 [23 Cal.Rptr. 772, 373 P.2d 860]; *Kite* v. *Coastal Oil Co., supra*; and see *Buck* v. *Standard Oil Co.,* 157 Cal.App.2d 230 [321 P.2d 67]; *Burger* v. *Burger,* 136 Cal.App.2d 360 [288 P.2d 926]; *Guerra* v. *Handlery Hotels, Inc.,* 53 Cal.2d 266 [1 Cal.Rptr. 330, 347 P.2d 674].) On the other hand, if the existence of *any* condition is one of fact it is the province of the jury to determine, under proper instructions, whether such condition is present. (*Kite* v. *Coastal Oil Co., supra.*) ▮ In the situation where the existence of the three conditions, or any of them, is a question of fact, the jury must first determine that each of such conditions exists before the judge can direct it to draw the inference of negligence. (*Kite* v. *Coastal Oil Co., supra; Burr* v. *Sherwin Williams Co., supra,* 42 Cal.2d 682, 688 [268 P.2d 1041]; *Borenkraut* v. *Whitten,* 56 Cal.2d 538, 547 [15 Cal. Rptr. 635, 364 P.2d 467].)

The plaintiffs do not here contend that the doctrine is applicable as a matter of law; nor do they assert that any of the aforementioned conditions exist as a matter of law. The instructions proffered by them are those which have been sometimes referred to as the ''qualified'' instructions on res ipsa loquitur.[3] These instructions consist of a preliminary

[3] ''One of the questions for you to decide in this case is whether the fire involved occurred under the following circumstances:

''First, that such a fire ordinarily does not occur in the absence of someone's negligence;

''Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant; and

''Third, that the fire was not due to any voluntary action or contribution on the part of the plaintiffs.

''If, and only in the event that you should find all these conditions to

instruction in the form of BAJI No. 206-A (revised), which directs the jury that it must first decide whether the fire in question occurred under circumstances in which *all* of the three conditions above specified are present, followed by the direction that if, and only in the event that they should find *all* these conditions to exist, they are instructed (in the form of BAJI No. 206 (revised)) that from the happening of the fire involved in this case an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. This latter instruction then goes on to define the effect of the inference, thus stating, in said instruction, the rule of res ipsa loquitur.

 In determining whether or not the evidence supports the theory of the requested instructions we must view the evidence in the light most favorable to the party offering the instructions. (*Edgett* v. *Fairchild*, 153 Cal.App.2d 734, 738 [314 P.2d 973]; *Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 633 [255 P.2d 795].) With this requirement as a guide we now turn to the ascertainment of whether the evidence so viewed establishes the elements which would entitle the plaintiffs to the requested instructions on the doctrine of res ipsa loquitur.

### The First Condition

 The first condition to be met is the requirement that the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence. This require-

---

exist, you are instructed as follows: . . . BAJI 206—A (Revised), as modified. . . .

"From the happening of the fire involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary, you must weigh all the evidence bearing upon the issue of defendants' negligence. If the evidence tending to prove that the fire was caused by a failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

"In order to meet or balance the inference of negligence, the defendant must present evidence to show either (1) a satisfactory explanation of the fire, that is, a definite cause for the fire, in which there is no negligence on the part of the defendant, or (2) such care on the defendant's part as leads to the conclusion that the fire did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue. . . . BAJI No. 206 (Revised) [as modified].''

ment is essentially predicated upon a basis of past experience which will permit the trier of fact to conclude that such an accident does not ordinarily happen unless someone has been negligent. (Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal.L.Rev. 183, 191.) In determining whether an accident was of such a nature that it probably was the negligence of someone, the courts have relied upon both common knowledge and the testimony of expert witnesses, as well as the circumstances relating to the accident in each particular case. (*Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 446; *Wolfsmith* v. *Marsh, supra,* 51 Cal.2d 832, 835.)

While the cause of a fire may be so foreign to the common experience of the ordinary juror that he cannot know without the aid of expert testimony whether a fire might be expected to result or not, there are some fires which are so simple as to fall within the common experience of any juror or lay witness. (*Manney* v. *Housing Authority,* 79 Cal.App.2d 453, 460 [180 P.2d 69].) Accordingly, with respect to forest fires, it is a matter of common knowledge that many such fires are caused by cigarettes and matches carelessly thrown and by camp fires improperly doused. These hazards are not only the subjects of widespread publicity by safety councils, public agencies and newspapers, but as we drive and travel the highways signs with cautionary admonitions serve to remind us of them. It is also a matter of common experience that sparks emitted from machinery and equipment in close proximity to inflammable materials may cause a fire.[4] (See *W. B. Camp & Sons, Inc.* v. *Turner Steel etc. Co.,* 141 Cal.App.2d 569, 571-572 [297 P.2d 125].) While it is also commonly known that forest fires may result from acts of God, such as lightning, it is also a matter of common knowledge that the instances of forest fires thus caused are few in comparison to the number which occur as a result of human conduct and activity. ■■■ Moreover, while it may also be true that all of the causes of forest fires are not within the common experience of men, but are subjects within the special knowledge of experts, it may be safely said that on the basis of past experience it is a matter of common knowledge that a forest fire does not ordinarily happen unless someone has been negligent.

---

[4]The commonly known hazard of machinery and equipment from which a spark, fire or flame may originate, located on or near any forest, brush or grass covered land has been recognized by the Legislature which has required, under penalty of punishment, certain specific safeguards between April 15 and December 1. (See Pub. Resources Code, §§ 4155, 4157; see also Pub. Resources Code, § 4167, *ante.*)

In the present case we have, in addition to the factor of common knowledge, the testimony of expert witnesses. The expert Cirabelani testified that most forest fires are caused by lightning strikes or "human elements"; and that among the causes within the latter category are power line fires, railroad fires, arson, fires started or set by machinery, and powder explosions. Cirabelani testified, further, that most wood fires in the area had been caused by chain saws. Another expert, the witness Ryder, testified that there are many causes of fire and specifically named lightning, lighted matches, internal combustion engines, loggers' donkeys, chain saws, and cigarettes.

The evidence need not show that this is a type of accident which *must* occur because of someone's negligence. The requirement is that in the light of past experience the accident probably was the result of negligence by someone. (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 298-299; *Faulk* v. *Soberanes,* 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593].)

As enunciated in the *Zentz* case, the theory of probability of negligence is both a reason for the doctrine and a basic condition for its application. (39 Cal.2d at p. 442.) It thus becomes the plaintiff's task to present sufficient evidence from which the jury may draw the conclusion that negligence is the most likely explanation of the accident. The inference of negligence which the jury may draw need not be a conclusive or compelling one. Where reasonable men may differ as to the balance of probabilities, the question whether an inference of negligence is to be drawn is one for the jury. (*Seneris* v. *Haas, supra,* 45 Cal.2d 811, 827.)

In the instant case there was sufficient evidence from which, on the basis of past experience, supplied both by common knowledge and the testimony of experts, the jury could draw the inference that someone was negligent. Accordinly, the first requisite condition has been met.

### The Second Condition

It is not enough, however, for the plaintiff to show that in the light of past experience the accident was probably the negligence of someone unidentified, but he must also show that the defendant is probably the one responsible. (*Di Mare* v. *Cresci, supra,* 58 Cal.2d 292, 298-299; *Borenkraut* v. *Whitten, supra,* 56 Cal.2d 538, 547.) "This he may do," says Prosser, *op. cit. supra,* "by a second inference, based on a showing of some specific cause for the accident within the defendant's

responsibility, or on a showing that the defendant was responsible for all reasonably probable causes to which the accident could be attributed." (Pp. 197-198.) ▣ In determining whether it is more probable than not that the defendant's negligence caused the accident the courts have considered such circumstances as the plaintiff's own conduct and the possibility that there could have been negligence causing the accident by some third person. (*Borenkraut* v. *Whitten, supra,* p. 547; *Guerra* v. *Handlery Hotels, Inc., supra,* 53 Cal.2d 266, 271; *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 446-447.) ▣ Moreover, it is a fundamental rule that the doctrine is not applicable where it is equally probable that the accident was caused by some fault for which the defendant was not liable and where it cannot be said that it is more likely than not that the accident was caused by the negligence of the defendant. (*Zentz* v. *Coca Cola Bottling Co., supra,* p. 443; *Borenkraut* v. *Whitten, supra,* p. 547.) The application of this rule, says *Borenkraut,* "usually presents a jury question." (P. 547.) ▣ In the application of this latter rule, however, it is not necessary for the plaintiff to exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident. (*Zentz* v. *Coca Cola Bottling Co., supra,* pp. 443-444.) We are thus again confronted with the rule of "the balance of probabilities." Accordingly, although there may be other equally probable causes in the first instance, these may be removed by evidence which will permit the jury to eliminate them. "Only enough is required, however, to permit a finding as to the greater probability." (Prosser, *op. cit. supra,* p. 198; and see *Phillips* v. *Southern Cal. Edison Co., Ltd.,* 23 Cal.App.2d 222 [72 P.2d 769].)

▣ In dealing with the question whether it is more probable than not that the defendant's negligence caused the accident, the courts have evolved the second requisite condition, i.e., that the defendant must have management or control of the agency or instrumentality which causes the accident. The purpose of this requirement is to eliminate the possibility that the accident was caused by someone other than the defendant. Accordingly, its use is merely to aid the courts in making the determination that it is more probable than not that the accident was the result of the defendant's negligence. (*Zentz* v. *Coca Cola Bottling Co., supra,* p. 443; *Borenkraut* v. *Whitten, supra,* pp. 547-548.)

The words "agency or instrumentality" refer to the

"thing" which caused the accident. (*Zentz* v. *Coca Cola Bottling Co., supra,* p. 441; *Hubbert* v. *Aztec Brewing Co.,* 26 Cal.App.2d 664, 687 [80 P.2d 185, 1016].) The cases and the authors of texts on the doctrine treat "agency" and "instrumentality" as having a common denotation, and hence, in speaking of the "thing" usually use the term "instrumentality." (Prosser, *op. cit. supra*; Witkin, Cal. Evidence, § 87, p. 106; and see, e. g., *Baker* v. *B. F. Goodrich Co., supra,* 115 Cal.App.2d 221, 226; *Zentz* v. *Coca Cola Bottling Co., supra,* p. 444; *Hubbert* v. *Aztec Brewing Co., supra,* p. 687; *Ybarra* v. *Spangard, supra,* 25 Cal.2d 486, 491.)

As to the question of control, this requirement is not an absolute one. Thus, while the second condition includes the words "exclusive control" in its definition, the control may be constructive as well as actual. (*Zentz* v. *Coca Cola Bottling Co., supra*; *Burr* v. *Sherwin Williams Co., supra,* 42 Cal.2d 683; *Baker* v. *B. F. Goodrich Co., supra.*) Accordingly, the control element is satisfied where the defendant has the *right of control* regardless of whether he exercises physical control. (See *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335].)

Do we have an instrumentality under the defendant's control ·in the instant case? The accident, here, was the fire; the "thing," whatever it was, that caused the fire is the instrumentality. (See *Hubbert* v. *Aztec Brewing Co., supra,* p. 687.) The only instrumentality shown by the plaintiffs to which the fire could with reasonable probability be attributed was the tractor which was seen to emit sparks. This was apparently the theory upon which the plaintiffs based their case. There is no question that such tractor was under the defendant's control. We are not, therefore, concerned with the control element in this case.

We now turn to the probabilities. The forest fire was either caused by an act of God, the negligence of a third person, the negligence of the defendant, or the fault of the plaintiffs. The last consideration is the subject of the third condition and we shall discuss it under that heading. The only act of God established as a possible cause of the fire is lightning. There was no evidence presented as to whether there had been any lightning storms at or about the time of the fire. The only evidence adduced as to the condition of the weather was as follows: that a light wind was blowing; that there was a breeze which came in gusts; that it would be

"a good breeze" and then slack off; that it was "quite warm"; that on the day of the fire it was "quite dry"; that the humidity was down; that the humidity registered 40; that when the humidity registers 40 it is dangerous because "sparks will set so quick" it being "[s]o dry there is no moisture in the air. . . ." In the absence of any direct evidence of lightning, the jury was justified, under the evidence, in concluding that there had not been any lightning strikes, and accordingly, in eliminating lightning as a probable cause. Moreover, in balancing this probability with the others hereinafter discussed, the jury, under the state of the evidence, would be justified in concluding that it was the least probable. The record is also barren of any conduct or activity on the part of any third person. While it is possible that third persons may have been on Skelton's land, we have the testimony adduced from Skelton's employee, Ludtke, that he did not see anyone in the area on the day of the fire other than the employees of Skelton. This testimony, when considered with the other circumstances, would not only justify the inference that there were no third persons in the area but also that it was more likely that the cause of the accident was the activity of Skelton's employees who were present in the area. (See *Price* v. *McDonald,* 7 Cal.App.2d 77 [45 P.2d 425].)

Against the foregoing probabilities, we have the probability of the defendant's negligence. The plaintiffs urge the tractor instrumentality as a probable cause and suggest, as an alternative, that because it may be inferred that the only men present in the area of the fire were Skelton's employees, a probable cause might also be the throwing of a lighted match or cigarette by such employees. There is nothing in the record, however, to show that any such match or cigarette was thrown. As said by Prosser, *op. cit. supra,* "Even though there is, beyond all possible doubt, negligence in the air, it is still necessary to bring it home to the defendant." (P. 196.) The only showing of some specific cause for the accident within Skelton's responsibility is the tractor, which was observed to emit sparks on the day of the fire. There was not only ample evidence that the fire originated on Skelton's land, but also evidence that the two tractors were the only machinery being used in close proximity to where the fire started. In particular, we have the tractor which emitted sparks. While it is true that there was no testimony that the tractor was seen to emit sparks prior to the fire, there was evidence that it did shortly after the fire started and while this par-

ticular tractor was being used in the fire-fighting operations. An inference that a state of affairs existed at a certain time may be reinforced by evidence that it continued to exist at a subsequent time, provided that too long a period has not elapsed and conditions have not changed. (Witkin, Cal. Evidence, § 148, p. 168; 2 Wigmore on Evidence, § 437, p. 413; *Slovick* v. *James I. Barnes Constr. Co.*, 142 Cal.App.2d 618, 625 [298 P.2d 923]; *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 P. 587]; *Willard* v. *Valley Gas & Fuel Co.*, 171 Cal. 9 [151 P. 286]; and see *Blank* v. *Coffin*, 20 Cal.2d 457, 463 [126 P.2d 868].) There was also evidence that the particular tractor was not equipped with a spark arrester. A violation of the statute requiring such arrester (Pub. Resources Code, § 4167, *ante*) would in itself raise a presumption of negligence. Additionally, we have the testimony of the expert witness, Ryder, that any internal combustion engine will shoot sparks together with his opinion that the instant fire was caused by sparks from the tractor in question. Ryder testified that in his opinion such sparks could travel as much as 30 feet, but that this was not a maximum, the distance being dependent upon the topography of the land and the size of the particles. This testimony, when coupled with that of Skelton's employees that the fire started from 40 to 50 feet from the main road, as well as other testimony which placed the fire in close proximity to the said road, presented a factual issue, as did the testimony that sparks from a tractor could not start such a fire, irrespective of the existence or nonexistence of a spark arrester. The fact that there may be a conflict in the testimony as to the exact origin of the fire, or as between the experts as to the probable cause of the fire, does not prevent the jury from indulging in the inferences within its province. As stated in *Tallerico* v. *Labor Temple Assn.*, 181 Cal.App.2d 15 [4 Cal.Rptr. 880]: "A conflict in the evidence addressed to the existence of any of the three factual conditions necessary to justify application of res ipsa loquitur does not preclude its application." (P. 19.) We cannot say, therefore, that reasonable men could not, under the evidence in this case, conclude that the more probable explanation of the fire was that it was caused by sparks from the tractor. Such a conclusion would supply the inference required by the second condition, unless, of course, the accident was due to any voluntary action or contribution on the part of the plaintiffs.

## The Third Condition

 The inference of negligence does not point to the defendant until the plaintiff himself has been eliminated as a cause. Accordingly, the plaintiff must account for his own conduct before res ipsa loquitur will apply. (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436].)

 He will not, however, be deprived of the doctrine even though he has participated in the events leading to the accident *if the evidence excludes his own conduct as a responsible cause.* (*Zentz* v. *Coca Cola Bottling Co., supra*, 39 Cal.2d 436, 444-445; *Baker* v. *B. F. Goodrich Co., supra*, 115 Cal. App.2d 221, 229.) "How and to what extent plaintiff must account for his own conduct," says *Baker*, "is explained by . . . [Prosser], as follows: . . . '[T]he plaintiff need only tell enough of what he did and how the accident happened to permit the conclusion that the fault was not his. Again he has the burden of proof by a mere preponderance of the evidence, *and even though the question of his own contribution is left in doubt, res ipsa loquitur may still be applied under proper instructions to the jury.*'" (P. 229.) Therefore, unless it can be said that the evidence here, as a matter of law, does not exclude the conduct of the plaintiffs as a responsible cause they are not deprived of the benefit of the doctrine.

 In the present case the plaintiffs purported to show that the fire was caused by sparks from the defendant's tractor and that none of the plaintiffs were present or active in the area excepting the plaintiff Boak and its employees. As to Boak, there was evidence to show that its activities and that of its employees consisted in the operation of a loading donkey and yarder at its landing some 742 feet away from where the fire started. The jury could thus conclude that the plaintiffs Roddiscraft and Products Company did not contribute to the fire and that plaintiff Boak's activities were far enough from where the fire started, so as to eliminate each of the plaintiffs as a probable cause. Even if we assume that the jury could infer that the fire started on the plaintiffs' property and that Boak's loading donkey might have emitted sparks (although there was no such evidence), we would, at best, have a factual question and a balancing of probabilities, the determination of which was for the jury. A finding in plaintiffs' favor on this question would satisfy the requirement of the third condition.

## The Specific Acts of Negligence

It is urged by the defendant that even if the court erred in

not giving the res ipsa loquitur instructions, the plaintiffs were not prejudiced by the error. The essence of its argument is that because the jury was specifically instructed that the violation of the statute providing for spark arresters (Pub. Resources Code, § 4167, *ante*) constituted negligence as a matter of law, the plaintiffs would not have fared any better with the res ipsa loquitur instructions. The defendant, conceding that there was sufficient evidence to justify a finding by the jury that there was a violation of statute, argues that it is apparent that the jury in returning a verdict for the defendant found that the failure to have a spark arrester was not the proximate cause of the fire.[5] This implied finding, says the defendant, is tantamount to a determination that there was no causal connection between the fire and the failure to have a spark arrester, and hence a finding that the fire was not caused by an agency or instrumentality in the control of the defendant, thus eliminating the second condition of the res ipsa loquitur doctrine.

The argument posed by the defendant would have us speculate as to the facts and circumstances which impelled the jury to reach a verdict for the defendant. Needless to say, were we permitted to enter the realm of speculation we might also conjecture that, had the res ipsa loquitur instruction been given, the jury might have reached a different result. The important consideration is whether the plaintiffs were entitled to the instructions on the subject of res ipsa. If they were, it was prejudicial error for the trial court to refuse to so instruct. (*Wolfsmith* v. *Marsh, supra,* 51 Cal. 2d 832, 835; *Hercules Powder Co.* v. *Automatic Sprinkler Corp.,* 151 Cal.App.2d 387, 397 [311 P.2d 907].)

The gist of the defendant's argument appears to be that because the plaintiffs produced evidence to show a violation of the statute requiring the spark arrester, i.e., specific evidence of the defendant's failure to use proper care, they have thus deprived themselves of the benefit of the doctrine. ▉▉▉ While some of the early California cases appear to give support to this rule, it is now well-established by recent, and better-reasoned cases, that proof of specific acts of negligence does not preclude the application of the doctrine except where the proof dispels the inference as a matter of law.

[5]The jury was also instructed as follows: "However, in this action, a violation of law is of no consequence unless it was a proximate cause of or contributed as a proximate cause to an injury found by you to have been suffered by the plaintiffs."

(*Di Mare* v. *Cresci*, *supra*, 58 Cal.2d 292, 299; *Boren-kraut* v. *Whitten*, *supra*, 56 Cal.2d 538, 548; *Leet* v. *Union Pac. R.R. Co.*, 25 Cal.2d 605, 620-622 [155 P.2d 42, 258 A.L.R. 1008]; *Freitas* v. *Peerless Stages, Inc.*, 108 Cal.App.2d 749, 756 [239 P.2d 671, 33 A.L.R.2d 778].) Accordingly, if the plaintiff meets the conditions of the doctrine, the fact that he may have also produced evidence of some specific acts of negligence would not deprive him of the benefits of the doctrine as long as the res ipsa loquitur inference may still be drawn. "It is only when he goes so far as to prove facts which dispel the inference as a matter of law that he loses its benefit." (Witkin, Cal. Evidence, § 98, p. 117, citing *Leet* and *Freitas*.)

In the present case, therefore, the plaintiffs were entitled to have the case go to the triers of fact with the inference of negligence supplied by res ipsa, plus other specific acts of negligence to be weighed against the defendant's showing. (*Leet* v. *Union Pac. R.R. Co.*, *supra*, p. 621.) ▮▮▮▮ The rule of res ipsa is a principle distinct from that of negligence per se resulting from a violation of statute. In the former an *inference* of negligence is raised; in the latter a *presumption* of negligence arises. Both rules may be applicable in a given case. (See *Alarid* v. *Vanier*, 50 Cal.2d 617 [327 P.2d 897]; and *Burger* v. *Burger*, *supra*, 136 Cal.App.2d 360.) ▮▮▮▮ The violation of statute gives rise to a presumption of negligence as a matter of law on proof of such violation, liability therefor being predicated, of course, upon such violation being a proximate cause of the injury. (*Alarid* v. *Vanier*, *supra*; *Tossman* v. *Newman*, 37 Cal.2d 522 [233 P.2d 1]; *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299 [3 Cal.Rptr. 718].) ▮▮▮▮ This presumption of negligence is rebuttable and may be overcome by evidence of justification or excuse. (*Alarid* v. *Vanier*, *supra*, p. 621.) ▮▮▮▮ In order to overcome this presumption the person who has violated the statute has the burden of showing that he did what might reasonably be expected of a person under ordinary prudence, acting under similar circumstances, who desired to comply with the law. (*Alarid* v. *Vanier*, *supra*, p. 624.) ▮▮▮▮ Under the res ipsa rule, however, once the inference of negligence arises, the defendant must produce evidence sufficient to meet the inference of negligence by offsetting or balancing it. (*Hardin* v. *San Jose City Lines, Inc.*, *supra*, 41 Cal.2d 432, 437.) ▮▮▮▮ This he does upon a showing either (1) of a satisfactory explanation of the accident, that is, an affirmative

showing of a definite cause of the accident, in which cause no element of negligence upon the part of the defendant inheres, or (2) of such care in all possible respects as necessary to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown. (*Dierman* v. *Providence Hospital* 31 Cal.2d 290, 295 [188 P.2d 12]; *Fry* v. *Sheedy*, 143 Cal.App.2d 615, 619 [300 P.2d 242].)

In the present case the defendant offered no evidence of justification or excuse for the violation of statute. Accordingly, the trial court was justified in not instructing on this phase of the rule. (*Cavagnaro* v. *City of Napa*, 86 Cal.App.2d 517 [195 P.2d 25].) The jury was thus left with the violation of statute and the question of proximate cause. Such violation being uncontradicted, the only issue for the jury's determination was whether such violation was the proximate cause of the fire. Under the state of the evidence and the instructions of the court the jury apparently concluded that the failure to equip the tractor with a spark arrester was not a proximate cause of the fire. The plaintiffs were, however, still entitled to have the inference of negligence supplied by res ipsa loquitur drawn in support of such specific proof. (*Freitas* v. *Peerless Stages, Inc., supra,* 108 Cal.App.2d 749, 756; *Leet* v. *Union Pac. R.R. Co., supra,* 25 Cal.2d 605, 621; Prosser, *op. cit. supra,* p. 214.) Had the jury been permitted to do so they might have reached a different conclusion. The jury was, in a measure, restricted to the circumstance of the failure to provide a spark arrester. In the instant case no contention can be made that such specific proof dispelled the inference as a matter of law because there are other facts and circumstances present which establish a foundation for the doctrine other than the absence of the spark arrester. In discussing the second condition of the doctrine, we pointed out such circumstances. We reiterate, in particular, the testimony that *the tractor did in fact emit sparks.* Being entitled to the inference of negligence afforded them by the doctrine, the plaintiffs were also entitled to the benefit inuring to them of placing the burden upon the defendant to go forward with the evidence, i.e., to produce evidence sufficient to meet the inference by offsetting or balancing it. (See *Hardin* v. *San Jose City Lines, Inc., supra,* 41 Cal.2d 432, 437.)

We conclude, therefore, that under the principles above discussed, the evidence of the plaintiffs in this case was

sufficient to submit to the jury the applicability of the rule of res ipsa loquitur and that the refusal of the trial court to so instruct constituted error. The trial court, recognizing such error, made its order granting a new trial.

Accordingly, we affirm the order of the trial court.

Bray, P. J., and Sullivan, J., concurred.