[Civ. No. 22935.    First Dist., Div. Four.    Apr. 25, 1967.]

FRANCES F. McFARLAND, Plaintiff and Appellant, v. WALTER BOOKER, Defendant and Respondent.

[Civ. No. 22936.    First Dist., Div. Four.    Apr. 25, 1967.]

FRANCES F. McFARLAND, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

(Consolidated Cases.)

Nathan Cohn and Michael Berger for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold and Scott Conley for Defendant and Respondent in No. 22935.

Thomas M. O'Connor, City Attorney, and George P. Agnost, Deputy City Attorney, for Defendant and Respondent in No. 22936.

RATTIGAN, J.—Plaintiff commenced two actions for damages for personal injuries. One, against the City and County of San Francisco, arises from a streetcar-auto accident in 1961. The other, against defendant Walter Booker, involves a wholly separate two-automobile collision in 1962, approximately nine months after the streetcar accident.

Upon plaintiff's motion pursuant to section 1048, Code of Civil Procedure, the two actions were consolidated in July 1963. In the single trial of the consolidated actions in June 1964, the jury returned a verdict for plaintiff for $5,000 in her action against the City and County, and in the Booker action a verdict against her and in favor of defendant Booker. Judgment was entered in both actions accordingly.

In the City and County action, defendant moved for a new trial upon all statutory grounds. The motion was granted upon the stated grounds of insufficiency of the evidence to support the verdict, and excessive damages. Plaintiff appeals from the order granting a new trial.

In the Booker action, plaintiff moved for a new trial upon the several grounds specified in section 657, subdivisions 1, 6 and 7, Code of Civil Procedure. Her motion was denied, and she appeals from the judgment. She also, purportedly, appeals from the order denying a new trial.

On appeal, plaintiff contends that the trial court erred in refusing her proposed jury instructions on the doctrine of res ipsa loquitur; that it abused its discretion in granting a new trial in the City and County action; and that the order grant-

ing a new trial to the defendant City and County operated to grant a new trial to the defendant in the consolidated Booker action as well.

### The City and County Accident

At a late evening hour on September 8, 1961, plaintiff was driving eastbound on Irving Street in San Francisco, where Irving dead-ends at its intersection with Arguello Street. At the intersection, her automobile, in which she was alone, was struck from the rear by a streetcar, also eastbound, owned and operated by the defendant City and County. The streetcar motorman did not testify.[1] Plaintiff's was the only eyewitness testimony produced at trial concerning this accident.

Immediately north of Irving Street, Carl Street commences at Arguello and continues eastbound. Plaintiff testified that she intended to proceed east on Carl Street, which would have required her to turn left into Arguello and right on Carl. At the Irving-Arguello intersection, the streetcar tracks maintained by the City and County also turn left from Irving into Arguello.

Plaintiff testified that, as she approached Arguello, she slowed down to check for cross traffic. In a portion of her pretrial deposition read at the trial, she described this maneuver as "drastically slowing down." Her automobile was moving at between five and ten miles per hour when it was struck from behind by the streetcar. Until the collision, she had not been aware of the streetcar behind her.

At trial, plaintiff could not recall whether she gave a hand signal when slowing down, nor whether her left front window was down. Her trial testimony was that the window might have been rolled up. In her deposition, she said that she had both hands on the steering wheel when she was struck, and that the car windows were up. At trial, she testified that the streetcar struck her automobile four times, pushing it approximately 70 feet forward although her foot was on the brake at all times.

Plaintiff further testified that her automobile came to rest

---

[1]The record shows that the motorman was one William Reid Lane, originally sued in the City and County action as "J. Goble." According to the pretrial conference order and the trial testimony of a City and County investigator, Lane could not be located before the trial. At pretrial, the City and County action was dismissed as to Lane. The parties (plaintiff and the defendant City and County) stipulated that, at the time and place of the streetcar accident, Lane was operating the streetcar in the course and scope of his employment by the City and County.

with its front end in contact with a parked automobile. The front end was not damaged. The rear end was damaged only slightly, at the tip of the left fender.

According to plaintiff, the streetcar operator addressed her in a "rather hostile manner" immediately after the accident, stating, " 'Now you're going to get it,' or 'Now you're in trouble,' something like that," to which she made no reply.

The accident was investigated by a San Francisco police officer, who testified as plaintiff's witness. When he arrived, the streetcar was still in contact with the rear end of plaintiff's automobile. The automobile was "wedged" between the streetcar and the east curb of Arguello Street. The automobile's rear end was damaged, but the car could be, and was, driven away. The streetcar was not damaged.

### The Booker Accident

Plaintiff and the defendant Booker testified concerning plaintiff's second accident. No other eyewitnesses, of the accident itself, were called by either party. This rear-end collision occurred in San Francisco on the morning of May 20, 1962, in one of the three southbound moving traffic lanes on Van Ness Avenue between its intersections with O'Farrell Street and Olive Street, and about 40 feet north of Olive.

Olive Street is apparently a city street in the legal sense, and it is curbed and signed as such. However, its street pavement and sidewalks are narrow in comparison with the same conventional widths on O'Farrell and Ellis Streets, the next parallel streets to the north and south, respectively. Olive Street is appropriately described in the testimony as an "alley," running west from Van Ness Avenue.

On May 20, 1962, plaintiff was driving the same automobile which had been in the streetcar accident the year before. She testified that she had been looking for a parking space in the neighborhood and, for this purpose, had been cruising the nearby streets. On her second or third "circuit," she entered Van Ness Avenue, southbound, north of O'Farrell Street. She stopped for a traffic light at O'Farrell Street. She did not see the Booker car before the accident.

The defendant Booker testified that he saw the plaintiff in the block before O'Farrell Street. In that block, she stopped twice "as though trying to find a parking space," before stopping at the O'Farrell Street intersection. At O'Farrell, defendant Booker stopped behind the plaintiff, with one car between them. At that stop, both cars were in the western-

most, or right-hand moving traffic lane on Van Ness Avenue, and both moved south in that lane when the O'Farrell Street signal changed.

The parties disagree totally as to what happened next. Our summary of the evidence deals in sequence with the subjects of their opposing versions.

The movements of the automobiles: Plaintiff testified that, while stopped in the right-hand lane at the O'Farrell Street intersection, she spotted a parking place in the curb lane in the next block of Van Ness Avenue, moved straight ahead in the same lane, stopped at the space, shifted into reverse, heard a squeal of brakes and was struck from behind after having been at a dead stop for "a couple seconds."

On this subject, defendant Booker testified that both cars moved out in the same lane when the light changed; that the intervening car moved to the left lane, leaving the Booker car directly behind plaintiff; that, still southbound and ahead of him, plaintiff then moved to her left, into the center southbound lane and that he, intending to turn right at Ellis Street, accelerated in the right-hand lane, reaching a speed of less than 25 miles per hour; that plaintiff suddenly "shot back" into his lane and stopped; that he applied his brakes, swerved to his left, skidded about ten feet, and his automobile struck plaintiff's car in the rear.

Signalling: Plaintiff testified that she gave a hand signal before stopping in the right-hand lane to park at the curb. Defendant Booker said she gave no signal and that, when he tested the mechanical signalling device in plaintiff's car after the accident, "There wasn't any . . . I didn't get any response out of it."

The impact: Plaintiff said her automobile was "jolted forward" a distance of at least two car lengths. Defendant Booker called it a "mild" impact, and said it moved plaintiff's car about a foot and a half.

A conversation after the accident: Plaintiff testified that "Mr. Booker said I had changed lanes, and I told him 'How could I? I had been in the right lane ever since . . .'—well, I named the street I turned onto Van Ness." Defendant Booker's version of the conversation was that plaintiff told him she was sorry, and that she had thought "that street" (indicating Olive Street) was Ellis Street, where she intended to turn right.

This accident was also investigated by a San Francisco police officer who testified for plaintiff. The officer found the

two automobiles, both facing south, in the right-hand traffic lane on Van Ness Avenue about 40 feet north of Olive Street. The right front end of the Booker vehicle was damaged, and was in contact with, or very close to, the left rear end of plaintiff's car. The left rear end of plaintiff's car was damaged and, in the officer's opinion, the damage was "fresh." The front end damage to the Booker car was more severe than the damage to plaintiff's vehicle. The former could not be driven after the accident; the latter could be, and was, driven away.

The officer saw no debris in the street, but observed 30 feet of parallel skid marks trailing from the rear of the Booker automobile. The marks were parallel and "overlapping" (rear wheel marks over front wheel marks), indicating—or suggesting—a 15- foot skid by Booker before the impact.

The evidence includes a set of photographs of plaintiff's automobile, taken after the second accident. Plaintiff testified that the car had not been repaired after the first accident, and that some of the photographs depicted its condition—still unrepaired—after the second accident. The photographs show some damage—apparently extremely slight—at the top and bottom of the left rear fender. Plaintiff's husband, testifying as her witness, ascribed the upper fender damage to the streetcar accident, the lower damage to the Booker collision.

### Plaintiff's Injuries

Plaintiff was six or seven months pregnant at the time of the City and County (first) accident. Two months later, she had a normal delivery of her baby. Soon after the first accident, and because of pain in her neck and back, she consulted Dr. Munter, an internist. About seven months *before* the first accident, she had seen Dr. Munter with complaints which were "similar" in some respects to the complaints she expressed to him after the accident. She visited Dr. Munter again on two or three occasions during the year following the City and County accident. He recommended heat applications and aspirin, but prescribed no specific medication for relief from pain.

A year later—five months after the Booker accident—plaintiff consulted an orthopedist. He treated her more extensively than had Dr. Munter, prescribing physiotherapy, an orthopedic garment and home traction with a weight apparatus. However, he saw her only on about a half-dozen occasions over a period of 18 months. Another orthopedist examined plaintiff on the defendants' behalf, and testified as their witness.

Plaintiff's principal complaint at all times was neck and back pain, setting in after the first accident, becoming more severe after the second one and persisting at the time of trial in 1964. The various physicians agreed, in substance, that plaintiff incurred a mild whiplash injury in the City and County accident; that its symptoms became more severe after the Booker accident; and that the symptoms consisted principally, if not exclusively, of her complaints of pain. There was evidence that some of plaintiff's pain symptoms were attributable to her pregnancy, some to a home fall about 10 months after the second accident, and some to a kidney infection which also followed the second accident. None of these events were associated with either accident. Plaintiff was not hospitalized at any time by reason of either accident.

Plaintiff's medical expenses following the accidents were about $790. All but one $7.50 item actually proved—for a single office visit to Dr. Munter—were incurred after the second accident. The sequence of medical bills in evidence indicates a total of seven (7) medical consultations ("office visits") for which plaintiff was charged $80. The $700 balance includes X-rays, physical therapy, an orthopedic corset and a traction outfit.

### Plaintiff's Res Ipsa Loquitur Instruction

The res ipsa loquitur instruction proposed by plaintiff[2] and refused by the trial court read as follows:

"You are instructed that if you find that an accident occurred as claimed by plaintiff, you are instructed as follows:

"From the happening of the accident involved in this case as established by the evidence, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of one or more of the defendants. That inference itself is a form of evidence, and if none other exists tending to overthrow it, or if the inference either alone or with any other evidence supporting it, preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon each of the defendants to rebut the inference by showing they did, in fact, exercise care and diligence or that the accident occurred without being proximately caused by any failure on their part."

[2]Plaintiff proposed two res ipsa loquitur instructions. The second one, assertedly based upon BAJI No. 206-B (Revised) relates to rebuttal of the inference of negligence. It was clearly designed to complement the first one, here quoted in full. Since it must, therefore, stand or fall with the first one, our decision is addressed to the first one only.

■ The *second* paragraph of the proposed instruction embodies the text of BAJI No. 206-B, the "unconditional" res ipsa loquitur instruction. The unconditional instruction "presupposes proof of the three conditions necessary to bring the doctrine of res ipsa loquitur into play." (*Hudspeth* v. *Jaurequi,* 234 Cal.App.2d 526 [44 Cal.Rptr. 428].) It has also been called the "standard" (*Hudspeth* v. *Jaurequi, supra*) or "basic" (*Keena* v. *Scales,* 61 Cal.2d 779, 783 [40 Cal.Rptr. 65, 394 P.2d 809]) res ipsa loquitur instruction. The unconditional instruction should be given where uncontradicted evidence shows that all of the three prerequisite conditions exist as a matter of law. (*Roddiscraft, Inc.* v. *Skelton Logging Co.,* 212 Cal.App.2d 784, 794 [28 Cal.Rptr. 277].)

■ Plaintiff did not submit the complementary instruction which, if given as a preface to the unconditional instruction's text (BAJI No. 206-B), would operate to produce a conditional instruction. The latter spells out the three prerequisite conditions[3] of res ipsa loquitur, and is to be given where the existence of the three conditions, or any of them, is a question of fact. In such case, the jury must first determine that each of the three conditions exists—or, as the case may be, some or one of them, to whatever extent none exists as a matter of law—before the trial court can direct that the inference of negligence be drawn. (*Roddiscraft, Inc.* v. *Skelton Logging Co., supra,* at pp. 794-795.)

---

[3] The conventional language of the conditional instruction precedes the BAJI No. 206-B text with the language of BAJI No. 206-A (Cal. Jury Instns., Civ. (1967 Supp. p. 47) No. 206-A (Revised)). The same language appeared at page 37 of the 1964 Supplement of California Jury Instructions, Civil, which was in use when the instant consolidated cases were tried in June 1964. It follows, extracted from the BAJI text but without hypothetical adaptation to the instant cases:

"One of the questions for you to decide in this case is whether the accident involved occurred under the following conditions:

"First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence;

"Second, that it was caused by an agency or instrumentality in the exclusive control of defendant; and

"Third, that the accident was not due to any voluntary action or contribution on the part of the plaintiff.

"If, and only in the event that you should find all these conditions to exist, you are instructed as follows:

". . . (The unconditional text of BAJI 206-B follows.)"

Where this language is used preceding the unconditional instruction, the combination has been called the "conditional" (*Gaspar* v. *Georgia Pacific Corp.,* 248 Cal.App.2d 248, 251 [56 Cal.Rptr. 243]), "qualified" (*Roddiscraft* v. *Skelton Logging Co., supra,* 212 Cal.App.2d at p. 795), and "contingent" (*Exploration Drilling Co.* v. *Heavy Transport, Inc.,* 220 Cal.App.2d 397, 408 [33 Cal.Rptr. 747]) res ipsa loquitur instruction.

The proposed instruction was correctly refused by the trial court because it was editorially deficient in several mutually independent respects. The all-encompassing defect is that the instruction expressly refers to a single accident in a two-accident situation. From ''an accident'' and ''the accident'' ''in this case,'' the instruction would draw ''an inference'' concerning the cause of ''the occurrence.'' Had it been given at the trial of these consolidated actions, the jury could only ask: Which accident? Which case? Which occurrence? At a trial involving two accidents, two cases and two occurrences, a res ipsa loquitur instruction which speaks only to one, without specification, is confusing because it is incomplete and misleading. It is not error for a trial court to refuse a proposed instruction which is defective in such respect. (*Pobor* v. *Western Pacific R. R. Co.*, 55 Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474] and cases cited.)

The plural phraseology employed in the instruction (''one or more of the defendants'' and ''each of the defendants'') reflects the modification suggested in BAJI and based upon *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]. But, as the BAJI suggestion points out (see directory comment, BAJI, 1956 ed., pp. 638-639), the modification is indicated in the *Ybarra* situation, ''involving several defendants who participated in an enterprise,'' i.e., multiple defendants but a single accidental event. Where there are multiple defendants by reason of multiple accidental events, the BAJI modification, without more, will not save an instruction which is addressed to a single event.

On appeal, plaintiff urges that the proposed instruction should have been given in the Booker action alone. As we have noted, it is not so limited; it refers to one of two accidents but does not specify which. But, in any event, the instruction would have been improper in the Booker action.

It is not disputed that the first two prerequisite conditions of res ipsa loquitur—negligence inferable from the rear-end collision and defendant Booker's control of his automobile—exist as a matter of law. Plaintiff and the defendant Booker disagree concerning the third prerequisite: whether plaintiff was free from fault as a matter of law. The question is not whether she was ''free from fault'' in the sense that she was contributorily negligent, or not, as a matter of law, but whether under the evidence her conduct was such as to permit or preclude the inference that defendant Booker was negligent.

Plaintiff argues that she was, as a matter of law, free from fault because her automobile was "stationary" when the Booker vehicle struck it from behind. She relies upon *Persike* v. *Gray,* 215 Cal.App.2d 816, 820 [30 Cal.Rptr. 603] and *Ponce* v. *Black,* 224 Cal.App.2d 159, 162 [36 Cal.Rptr. 419], in both of which it is stated that res ipsa loquitur applies as a matter of law where a defendant motorist rear-ends a "stationary" vehicle.

But the evidence in the Booker action is conflicting as to plaintiff's conduct. By her version, she signalled, came to a lawful stop, and was at a standstill for an appreciable interval before the impact. According to defendant Booker, plaintiff suddenly changed lanes and suddenly stopped, without warning in either instance. Resolution of this conflict was for the jury. Where the application of res ipsa loquitur depends upon a determination of factual issues, it is not compelled as a matter of law and the unconditional instruction is properly refused. (*Faulk* v. *Soberanes,* 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593].) In a rear-end collision case, where the evidence is conflicting "whether plaintiff's car was stationary or whether it stopped suddenly and without warning. . . ." the unconditional instruction is not applicable and only the conditional instruction should be given (*Hudspeth* v. *Jaurequi, supra,* 234 Cal.App.2d at pp. 527, 528.) It follows that plaintiff's proposed instruction was properly refused in the Booker action alone.

A premise of this conclusion is that the proposed instruction is, in fact, unconditional. Plaintiff and defendant Booker have both treated it as such on appeal. It should be noted, though, that both parties have ignored its introductory sentence, which would purportedly have permitted the jury to draw the inference of negligence ". . . if you find that an accident occurred as claimed by plaintiff, . . ." The sentence suggests at least, that the jury could have applied res ipsa loquitur if it accepted plaintiff's version that her automobile was "stationary," i.e., not at a sudden stop without warning, when the Booker car struck it.

In *Keena* v. *Scales,* 61 Cal.2d 779, 784 [40 Cal.Rptr. 65, 394 P.2d 809], a similarly brief sentence (not this one), offered in preface to the unconditional text, was held to have effected a conditional instruction which should have been given upon conflicting evidence of the plaintiff's conduct. The *Keena* court, however, considered the precise language of plaintiff's introductory sentence here, identified its source (a suggestion

by the Supreme Court in *Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 435 [260 P.2d 63]), and distinguished it as being applicable only where the issue (as in *Hardin*) was whether the accident had occurred at all. There is no such issue here: that the Booker accident happened is undisputed. In the *Keena* case, the prefatory language in the instruction was substantially different than that employed in plaintiff's first sentence here; it was applicable to, and limited by, a different and unusual context of fact in that case; and it was properly addressed to a single accidental event. Accordingly, the holding in *Keena* v. *Scales* does not operate here to condition the proposed instruction; and, if it did, the instruction's principal defect—that it was a one-accident instruction in a two-accident trial—would persist. It was properly refused in any event.

### The Order Granting a New Trial
### In The City and County Action

The trial court did not err in granting a new trial to the defendant City and County. ▮ Where a new trial is granted for insufficiency of the evidence, an appellate court will reverse only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment, and no abuse of discretion will be found where the record indicates a conflict in the evidence as to negligence and some evidence which would support a finding of contributory negligence. (*Yarrow* v. *State of California*, 53 Cal.2d 427, 434-435 [2 Cal.Rptr. 137, 348 P.2d 687].) ▮ In plaintiff's action against the City and County, there was substantial evidence, from her own account, which would have supported a result favorable to the defendant: e.g., plaintiff's "drastically slowing down" just before the collision, her apparent failure to warn following traffic by an appropriate signal as required by section 22109, Vehicle Code, and her unawareness of the streetcar's presence behind her at any time before the impact.

There are, also, conflicts in the evidence which derive from plaintiff's version of the City and County accident. Although she testified to four successive impacts, there was no debris in the street, no damage to the streetcar, and only superficial damage at one limited location on the rear of her automobile. She said that her vehicle was pushed for a distance of 70 feet with its brakes on, to a stop with its front end against a parked automobile. The investigating officer, though, found no skidmarks; plaintiffs car was against a curb when he arrived;

and there was no damage to its front end. Plaintiff made no statement—accusatory or protesting or otherwise—to the streetcar motorman, and did not respond to a remark by him which obviously impugned her conduct before the accident.

Plaintiff testified as the sole eyewitness to the City and County accident. Her testimony was not substantiated in some respects, and she was contradicted in others, by the physical evidence. Under these circumstances, the trial court would have been justified in questioning her testimony and in granting a new trial for that reason. (Cf. *Montijo* v. *Western Greyhound Lines,* 219 Cal.App.2d 342, 347 [33 Cal.Rptr. 184].)

The same is true as to the order granting a new trial upon the ground of excessive damages. Plaintiff was not hospitalized as a result of the City and County accident. The expert witnesses were in substantial concurrence that she incurred a mild whiplash injury, but disagreed concerning the prognosis and the existence of any permanent disability. Her symptoms were virtually all subjective, and there was evidence that she had indicated one symptom—muscle spasm—several months before the City and County accident. She normally delivered a child she had been carrying at the time of the accident. There was evidence tending to attribute some of her symptoms to causes not related to the accident. An overall view of the evidence discloses material conflict concerning the extent of her injuries. "The ruling of a trial court in granting a new trial on the ground of excessive damages will not be reversed on appeal unless it plainly appears that the trial judge abused his discretion; and when there is material conflict of evidence regarding the extent of the damage, the imputation of such abuse is repelled, the same as if the ground of the order were insufficiency of the evidence to justify the verdict. [Citations.]" (*Gill* v. *Epstein,* 62 Cal.2d 611, 616 [44 Cal.Rptr. 45, 401 P.2d 397].)

*The Effect of the Order Granting*
*New Trial In One of Two Actions*
*Tried Under Consolidation*

Plaintiff also urges on appeal that the order granting the defendant a new trial in the City and County action operates to grant her own motion for a new trial in the Booker action, because the actions were consolidated. She states that the effect of the consolidation was that "there should be but one conclusion and one judgment." We disagree. In *McClure* v. *Donovan,* 33 Cal.2d 717 [205 P.2d

416

17], the Supreme Court drew the controlling distinction with this language (pp. 721-722):

██ "Ordinarily, consolidated actions may be determined by a single set of findings and a single judgment—'the allegations of the various complaints may be taken together and treated as one pleading' (*Simpson* v. *Bergmann* [consolidation of actions to foreclose mechanics' liens, Code Civ. Proc., § 1184a], 125 Cal.App. 1, 6 [13 P.2d 531]) and 'for the purposes of all further proceedings, the cases are to be treated as if the causes had been united originally' (1 Cal.Jur. § 51, p. 374). But a different situation exists where pending actions are consolidated only for the purpose of trial of related issues. In such event the evidence presented in one case is to be deemed applicable in the other insofar as it is relevant thereto, but separate findings and judgments must be made in each case in disposition of the particular issues as independently submitted."

In support of her position on the effect of consolidation, plaintiff relies upon *Wolfson* v. *Beatty,* 118 Cal.App.2d 392, 398 [257 P.2d 1017], *Huntoon* v. *Hurley,* 137 Cal.App.2d 33, 40 [290 P.2d 14], and *Martyn* v. *Leslie,* 137 Cal.App.2d 41, 43 [290 P.2d 58]. But these cases involved either separate actions by the same plaintiffs against the same defendants (*Huntoon* and *Martyn*) or the same parties seeking the same relief in reciprocal actions against each other (*Wolfson*). In each case, consolidation effected a "single conclusion" because the facts of each placed it within the first category defined by the Supreme Court in *McClure* v. *Donovan, supra.* ██ The consolidation of the actions at bench was "only for the purpose of trial of related issues," notably plaintiff's injuries. The result was to place these two actions in the second category (*ibid.*), wherein each retains its separate identity and the disposition in one is independent of the other. (See also *Johnson* v. *Marr,* 8 Cal.App.2d 312, 314 [47 P.2d 489]; *National Electrical Supply Co.* v. *Mount Diablo Unified School Dist.,* 187 Cal.App.2d 418, 422 [9 Cal.Rptr. 864]; and see discussion, 2 Witkin, Cal. Procedure (1954) §§ 156 and 157, pp. 1134-1135.)

It has been held that, in a single action where the liabilities of allegedly joint tortfeasors were mutually independent, the granting of a new trial as to one of them did not require a new trial as to others who had been exonerated by a jury. (*Ragusano* v. *Civic Center Hospital Foundation,* 199 Cal.App. 2d 586, 599-604 [19 Cal.Rptr. 118].) Plaintiff's situation is

not distinguishable where her separate actions against two allegedly successive tortfeasors were consolidated, one was exonerated by a jury, and a new trial was granted as to the other.

The judgment in the Booker action is affirmed. The order denying a new trial therein is not appealable (Code Civ. Proc., § 963), and the same is dismissed. The order granting a new trial in the City and County action is affirmed.

Devine, P. J., and Christian, J., concurred.