Filed 3/29/13  Ahluwalia v. Cruz CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BHUPINDER AHLUWALIA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>EDDIE CASTRO CRUZ,<br><br>        Defendant and Respondent. | A132847<br><br>(Alameda County<br>Super. Ct. No. RG 10493859) |

Bhupinder Ahluwalia and Eddie Castro Cruz were involved in a motor vehicle accident on Interstate 238 in Alameda County.  Ahluwalia sued Cruz for negligence.  A jury found that Cruz was not negligent and judgment was entered in his favor.  Ahluwalia appeals, arguing that the trial court erred by refusing to give a conditional instruction on res ipsa loquitur.  We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

At trial, Ahluwalia testified that, on October 16, 2009, at approximately 9:00 p.m., his white Toyota pickup truck was rear-ended by Cruz.  Ahluwalia was traveling northbound on I-238, which is composed of three lanes of northbound traffic, when he pulled over on the shoulder to converse with his wife, who was following in a separate car.  Thereafter, he merged into the slow lane at about 35 miles per hour.  It was dark at the time.  Ahluwalia traveled in the slow lane for about two or three seconds (almost 400 yards) when he decided to move over to the middle lane, to his left.  Before he made his lane change, he turned on his signal indicator, looked to his left, and checked his rear and side mirrors.  There was no traffic in the lane within 100 or 200 yards.  Ahluwalia

1

testified that he merged into the middle lane while traveling at approximately 50 or 55 miles per hour.

Ahluwalia testified that he was in the middle lane for almost two football field lengths or for "[m]aybe five, six or ten second[s]." He slowed down from 55 miles per hour to about 30 miles per hour because he saw cars in front of him slowing down with their brake lights on. His truck was then hit from behind. After his truck was hit, it went forward and to the left, into the left cement divider.

Because he was unable to do so, Ahluwalia did not give a statement to the California Highway Patrol officer responding to the scene of the accident. However, Ahluwalia's wife, who had been following in a separate car, told the officer she was not sure if her husband's truck was completely in any one lane at the time of the collision. The police officer testified at trial that he was under the impression, from talking to Ahluwalia's wife at the scene of the accident, that Ahluwalia's truck was moving left across the freeway when the accident occurred. At trial, Ahluwalia's wife testified that she had not seen any movement of her husband's vehicle.

Two weeks after the accident, Ahluwalia received a copy of the police report indicating he was making an unsafe lane change at the time of the accident and that the accident was completely his fault. Ahluwalia was advised by his insurance company to "correct" the report and give a statement. Ahluwalia went to the police station and left his phone number. However, no one called. Ahluwalia never filed a report or a supplemental report containing his version of events.

Cruz admitted, at trial, that his Toyota pickup truck struck the rear of Ahluwalia's truck. But, Cruz testified that he never saw Ahluwalia's truck either before, during, or after the collision. He testified that he was wearing glasses at the time, the weather was good, his headlights were working, and there was nothing that kept him from seeing out of his windshield.

Cruz remembered traveling at 50 miles per hour in the middle lane. Up until the time of impact, he never varied his speed from 50 miles per hour. The only car in front of Cruz, in the middle lane, was at least a quarter of a mile ahead. Cruz saw brake lights

on that car and started to step on the brakes. However, before he hit his brakes, the collision occurred. He was still traveling 50 miles per hour. There was a car on his right side, but it never passed him before the collision. Cruz testified: "I . . . felt his presence the whole time."

At the time of the collision, Cruz did not think he had hit anything. Cruz was looking forward and there was nothing there and then, all of a sudden, he heard a boom. His hood folded in half and his glasses flew off. He thought his truck had been hit from behind. He testified: "I [thought] I saw an orange SUV. But later on it turned out that what I was really seeing, you have to remember now, I didn't have my glasses on. [They] flew off at the impact. And what I saw was something in front of me that was orange. And it turned out that what that orange was the hood of my car with the reflection of brake lights." Cruz was asked: "Did you ever see anything cut in front of you that ended up impacting with the front of your vehicle?" He answered: "No."

Ahluwalia presented the testimony of an accident reconstruction expert, Michael Braun, who examined the police report, deposition testimony, and photographs of damage to the two vehicles. Braun determined, from the physical evidence, that there was a speed differential between the two trucks, at the time of impact, of about 35 miles per hour. Braun also found a relative angle between the vehicles of approximately five degrees. He testified: "There's a slight offset to the right on the part of Mr. Ahluwalia's vehicle." He further testified that the five-degree angle was relatively shallow or a small angle which could be the result of a lane change by one of the vehicles, normal movement back and forth within the lane, or a vehicle turning prior to the collision. Braun could not determine, from the physical evidence, whether Ahluwalia in fact changed lanes into the path of Cruz's truck, whether Cruz changed lanes into Ahluwalia's truck, or whether Cruz simply rear-ended Ahluwalia.

Cruz presented the testimony of another accident reconstruction expert, Toby Gloekler. Gloekler reviewed the police report, the photographs of the damaged vehicles, and the deposition testimony. He also conducted a series of computer simulations that effectively ruled out the other two scenarios and suggested the cause of the accident was

3

an unsafe lane change by Ahluwalia into Cruz's path. Gloekler based his opinion on several factors including the damage patterns on the vehicles, which reflected the point of contact was on the left rear of Ahluwalia's truck and the right front of Cruz's truck, and the fact that Ahluwalia's truck was pushed to the left on impact.

Ahluwalia requested a conditional res ipsa loquitur instruction. His trial counsel argued: "[S]hould the jury believe that . . . Cruz just wasn't paying attention and ran into the back of my client's [truck], . . . we're entitled to get an inference of negligence; i.e., someone shouldn't rear end someone else absent someone's negligence." The requested instruction read as follows: "In this case, [Ahluwalia] may prove that [Cruz's] negligence caused [his] harm *if* [*he*] *proves* all of the following: [¶] 1. That [Ahluwalia's] harm ordinarily would not have happened unless someone was negligent; [¶] 2. That the harm was caused by something that only [Cruz] controlled; and [¶] 3. That [Ahluwalia's] voluntary actions did not cause or contribute to the event[s] that harmed [him]. [¶] If you decide that [Ahluwalia] did not prove one or more of these three things, then [insert one of the following] [¶] [your verdict must be for [Cruz] [¶] [or] [¶] [you must decide whether [Cruz] was negligent in light of the other instructions I have read.] [¶] *If you decide that* [*Ahluwalia*] *proved all of these three things, you may, but are not required to*, find that [Cruz] was negligent or that [Cruz's] negligence was a substantial factor in causing [Ahluwalia's] harm, or both. [¶] You must carefully consider the evidence presented by both [Ahluwalia] and [Cruz] before you make your decision. You should not decide in favor of [Ahluwalia] unless you believe, after weighing all of the evidence, that it is more probable than not that [Cruz] was negligent and that [his] negligence was a substantial factor in causing [Ahluwalia's] harm."[1]  (Italics & some brackets added.)

---

[1] The proposed instruction was a modified version of CACI No. 417, which currently provides: "[Name of plaintiff ] may prove that [name of defendant]'s negligence caused [his/her] harm if [he/she] proves all of the following: [¶] 1. That [name of plaintiff]'s harm ordinarily would not have happened unless someone was negligent; [¶] 2. That the harm was caused by something that only [name of defendant] controlled; and [¶] 3. That [name of plaintiff]'s voluntary actions did not cause or contribute to the event[s] that harmed [him/her]. [¶] If you decide that [name of plaintiff] did not prove

4

The trial court rejected the proposed instruction. It explained: "I will not give a res ipsa loquitur instruction. . . . [¶] . . . [¶] [In order for the doctrine to apply,] '[the accident] must be caused by an agency or instrumentality within the exclusive control of the defendant.' [¶] Not so here. One of the scenarios said it could have been [Ahluwalia]. One of Dr. Braun's scenarios said [Ahluwalia] could have caused this accident. So it's clear it wasn't within the exclusive control of [Cruz] . . . . [¶] 'And . . . it must not have been due to any voluntary action or contribution on the part of the plaintiff.' [¶] It could have been entirely because of [Ahluwalia]. So the doctrine doesn't apply." Ahluwalia's counsel argued, in response: "[T]here's a difference between presumption of negligence and inference of negligence. All the cases you're citing say you can no longer get a presumption of negligence. But the parties are still entitled to a conditional res ipsa [instruction.] [¶] . . . [¶] And that's the way it reads now in CALJIC. They no longer have the presumption of negligence. It's just an inference of negligence."

After receiving further briefing from Ahluwalia, the trial court reiterated: "You're not getting the res ipsa instruction. I've read your cases. [¶] . . . [T]he California Supreme Court in [*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820 (*Brown*)] set forth the standard and the required conditions. And they're just what I said before. The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; it must be caused—2, it must be caused by an agency or instrumentality within the exclusive control of the defendant; and 3, it must not have been

_____

one or more of these three things, you must decide whether [name of defendant] was negligent in light of the other instructions I have read. [¶] If you decide that [name of plaintiff] proved all of these three things, you may, but are not required to, find that [name of defendant] was negligent or that [name of defendant]'s negligence was a substantial factor in causing [name of plaintiff]'s harm, or both. [¶] [Name of defendant] contends that [he/she/it] was not negligent or that [his/her/its] negligence, if any, did not cause [name of plaintiff] harm. If after weighing all of the evidence, you believe that it is more probable than not that [name of defendant] was negligent and that [his/her] negligence was a substantial factor in causing [name of plaintiff]'s harm, you must decide in favor of [name of plaintiff]. Otherwise, you must decide in favor of [name of defendant]." (Italics omitted.)

5

due to any voluntary action or contribution on the part of the plaintiff.  And that doesn't apply in this case."

After being instructed on the general principles of negligence, the jury reached a defense verdict by a 10 to 2 vote.  In its special verdict, the jury found that Cruz was not negligent.  Judgment was entered on May 31, 2011.  After unsuccessfully arguing that the trial court's refusal to give the res ipsa loquitur instruction entitled him to a new trial, Ahluwalia filed a timely notice of appeal.[2]

## II.    DISCUSSION

On appeal, Ahluwalia contends that the court erred when it refused to instruct the jury on conditional res ipsa loquitur and, thereafter, denied his motion for new trial. Specifically, he maintains that whether res ipsa loquitur applied was a question of fact for the jury to decide because he presented substantial evidence to support each condition of the doctrine.  We disagree.

"[C]ertain kinds of accidents are so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for itself.'  The Latin equivalent of this phrase, 'res ipsa loquitur,' was first applied to a barrel of flour that rolled out of the window of the defendant's warehouse onto the plaintiff. [Citation.]  As later courts repeated the phrase, it evolved into the name of a rule for determining whether circumstantial evidence of negligence is sufficient.  The procedural and evidentiary

_____

[2] On August 5, 2011, Ahluwalia filed his original notice of appeal, which challenged only the judgment.  On August 15, 2011, he filed an amended notice of appeal challenging both the judgment and the trial court's denial of his motion for a new trial. "[An] order denying a new trial is nonappealable but subject to review on appeal from the judgment." (*Leaf v. City of San Mateo* (1984) 150 Cal.App.3d 1184, 1187, fn. 2, disapproved on other grounds by *Trope v. Katz* (1995) 11 Cal.4th 274, 292; accord, Code Civ. Proc., § 906 ["[u]pon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial"].)

consequences that follow from the conclusion that an accident 'speaks for itself' vary from jurisdiction to jurisdiction.

"In California, the doctrine of res ipsa loquitur is defined by statute as 'a presumption affecting the burden of producing evidence.' (Evid. Code, § 646, subd. (b).)[3]  The presumption arises when the evidence satisfies three conditions: ' "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." ' [Citation.]  A presumption affecting the burden of producing evidence 'require[s] the trier of fact to assume the existence of the presumed fact' unless the defendant introduces evidence to the contrary.  ( . . . § 604; see also . . . § 646, subd. (c).)  The presumed fact, in this context, is that 'a proximate cause of the occurrence was some negligent conduct on the part of the defendant . . . .'  ( . . . § 646, subd. (c)(1).)  If the defendant introduces 'evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence,' the trier of fact determines whether defendant was negligent without

---

3 All further section references are to the Evidence Code unless otherwise indicated.  Section 646 provides:  "(a) As used in this section, 'defendant' includes any party against whom the res ipsa loquitur presumption operates. [¶] (b) The judicial doctrine of res ipsa loquitur is a presumption affecting the burden of producing evidence. [¶] (c) If the evidence, or facts otherwise established, would support a res ipsa loquitur presumption and the defendant has introduced evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence, the court may, and upon request shall, instruct the jury to the effect that: [¶] (1) If the facts which would give rise to a res ipsa loquitur presumption are found or otherwise established, the jury may draw the inference from such facts that a proximate cause of the occurrence was some negligent conduct on the part of the defendant; and [¶] (2) The jury shall not find that a proximate cause of the occurrence was some negligent conduct on the part of the defendant unless the jury believes, after weighing all the evidence in the case and drawing such inferences therefrom as the jury believes are warranted, that it is more probable than not that the occurrence was caused by some negligent conduct on the part of the defendant."

regard to the presumption, simply by weighing the evidence. ( . . . § 646, subd. (c); see also . . . § 604.)" (*Brown, supra,* 4 Cal.4th at pp. 825–826.)[4]

" 'The doctrine of res ipsa loquitur is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone *and that the defendant is probably the one responsible.*' [Citations.]" (*Howe v. Seven Forty Two Co., Inc.* (2010) 189 Cal.App.4th 1155, 1161, italics added.) "In determining whether such probabilities exist in respect to the particular accident, the courts have relied both on common knowledge and on expert testimony. [Citations.]" (*Cordova v. Ford* (1966) 246 Cal.App.2d 180, 184–185.)

_____

[4] In *Brown, supra,* 4 Cal.4th 820, our Supreme Court considered a personal injury suit filed after the plaintiff slipped, on a slice of lunch meat, and fell on school grounds. The court reversed the appellate court's conclusion that the doctrine of res ipsa loquitur precluded summary judgment for the defendant. (*Id.* at pp. 823–824.) The high court reasoned: "Because there is no evidence that the lunch meat came to be on the floor through an employee's negligence, the District is entitled to summary judgment unless the doctrine of res ipsa loquitur would permit a jury to infer that fact. [¶] . . . [¶] Experience teaches that slips and falls are not so likely to be the result of negligence as to justify a presumption to that effect. As Prosser and Keeton explain, 'there are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault. . . . [A]n ordinary slip and fall . . . will not in [itself] justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply.' (Prosser & Keeton, Torts (5th ed. 1984) § 39, p. 246.) This is true even when the fall is associated with a slippery object, because objects all too often appear on floors without sufficient explanation. . . . [¶] . . . [¶] While we need not go so far as to say that res ipsa loquitur can never apply to a slip and fall, the evidence in this case fittingly illustrates why such an occurrence ordinarily does not 'speak for itself.' The lunch meat that apparently caused the accident went undetected until [the plaintiff] fell; afterward, it was found stuck to the sole of his shoe. To be sure, the lunch meat might have been dropped by an employee, but it might also have been dropped by a visitor, tracked in from the outside or from [the plaintiff's] own van, transported by an animal, or fallen from an object carried down the hall, even from one of the computers that [the plaintiff] was delivering. Some of these explanations do not presuppose negligence, and none is inherently more probable than the others. In short, there is no basis whatever for a finding that either of the doctrine's first two conditions existed, i.e., (1) that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence, or (2) that it was caused by an agency or instrumentality within the defendant's exclusive control." (*Brown,* at pp. 825–827.)

"The unconditional [res ipsa loquitur] instruction should be given where uncontradicted evidence shows that all of the three prerequisite conditions exist as a matter of law.  [Citation.] [¶] . . . [The conditional instruction] spells out the three prerequisite conditions of res ipsa loquitur, and is to be given where the existence of the three conditions, or any of them, is a question of fact.  In such case, the jury must first determine that each of the three conditions exists—or, as the case may be, some or one of them, to whatever extent none exists as a matter of law—before the trial court can direct that the inference of negligence be drawn.  [Citation.]"  (*McFarland v. Booker* (1967) 250 Cal.App.2d 402, 411–412, fn. omitted.)  "In order to justify the conditional res ipsa loquitur instruction, a plaintiff need not demonstrate all the facts necessary to the res ipsa loquitur inference, but need only produce evidence sufficient to support findings that the requisite conditions are present.  [Citation.]"  (*Diamond Springs Lime Co. v. American River Constructors* (1971) 16 Cal.App.3d 581, 601.)  In other words, "even if a trial judge would not find the fundamental elements from the evidence he must give the conditional instruction if the jury could reasonably find them to exist."  (*Folk v. Kilk* (1975) 53 Cal.App.3d 176, 184.)  "In determining whether appellant was entitled to the benefit of the conditional res ipsa loquitur doctrine, the evidence must be viewed in the light most favorable to him."  (*Id.* at p. 186; accord, *Gicking v. Kimberlin* (1985) 170 Cal.App.3d 73, 76.)

Ahluwalia contends that his own "testimony excluded [him] as a responsible cause even though [he] participated (i.e., he was driving when rear-ended)," that "it is for the jury to decide between [his] version and [Cruz's] expert's version," and "[t]hat is precisely why the res ipsa instruction should have been given in this case."  (Some capitalization omitted.) Ahluwalia suggests that if one driver hits another driver from behind, the driver in the rear is always at fault.  However, this is not the law.

"A driver is not necessarily negligent because his vehicle rear-ends another.  [Citations.]"  (*Pittman v. Boiven* (1967) 249 Cal.App.2d 207, 214.)  Rather, the question of the rear driver's negligence is essentially a question of fact, not of law, which depends upon the conditions surrounding the occurrence of the accident.  (*Id.* at pp. 213–214.)

9

Accordingly, in motor vehicle negligence cases, res ipsa loquitur has been applied narrowly to collisions between a moving vehicle and one that is stationary. (*Steuer v. Phelps* (1974) 41 Cal.App.3d 468, 473.) "Indeed as a general rule the mere occurrence of a collision between two motor vehicles does not of itself present a situation for the application of the doctrine [citations] although a collision may occur under such circumstances as to warrant the application of the doctrine, as for example in rear-end collision cases *where the rear car has collided with a stopped or stationary vehicle*. [Citations.] [¶] As Prosser puts it: 'All courts are agreed that the mere fact of a collision of two automobiles gives rise to no inference of negligence against either driver in an action brought by the other. . . . It is only where one vehicle is stationary, or its driver's fault is eliminated by some other specific evidence, that res ipsa loquitur can apply against the other.' (Prosser on Torts (3d ed.) p. 226.)" (*Cordova v. Ford, supra,* 246 Cal.App.2d at p. 185, italics added.)

In arguing that a conditional res ipsa instruction was required, Ahluwalia relies on *Mercer v. Perez* (1968) 68 Cal.2d 104, *McFarland v. Booker, supra,* 250 Cal.App.2d 402 and *Hudspeth v. Jaurequi* (1965) 234 Cal.App.2d 526.[5] However, all three cases are distinguishable and merely demonstrate the rule we have just enunciated.

In *Mercer v. Perez, supra,* 68 Cal.2d 104, a car driven by the plaintiff slowed *and stopped* at an intersection on a two-lane highway, in order to make a left turn. After the defendant saw that the plaintiff's car had come to a full stop, the defendant's brakes failed to hold, and the plaintiff's car was hit from behind. (*Id.* at pp. 124–125.) Our Supreme Court held that the trial court committed prejudicial error in instructing on contributory negligence when there was no evidence that the plaintiff was negligent. (*Id.* at p. 124.) In its analysis of prejudice, the court went on to observe: "The evidence of defendants' negligence, moreover, is strong [citation]: 'The mere fact that a driver of a

---

5 Ahluwalia also relies on numerous other opinions involving application of the res ipsa doctrine in cases not involving motor vehicle negligence. Because they are not factually on point, we do not discuss them.

vehicle does run down the vehicle ahead of him furnishes some evidence that he either was driving at too high a rate of speed, or that he was following too closely the vehicle ahead of him.' [Citation.] In such circumstances a plaintiff is entitled to an instruction on the inference of the defendant's negligence under the doctrine of res ipsa loquitur [citation], and one was given here. The evidence adduced by defendants to dispel the latter inference is, by contrast, weak and unconvincing." (*Id.* at p. 126, fn. omitted.)

In *McFarland v. Booker, supra,* 250 Cal.App.2d. 402, there was a conflict in the evidence regarding whether the plaintiff's vehicle was stopped at the time of the collision. The reviewing court concluded that the trial court had not erred in refusing an unconditional res ipsa instruction. (*Id.* at pp. 413–414.) The court observed: "In a rear-end collision case, *where the evidence is conflicting 'whether plaintiff's car was stationary or whether it stopped suddenly and without warning . . . '* the unconditional instruction is not applicable and only the conditional instruction should be given [citation]." (*Id.* at p. 413, italics added.)

In *Hudspeth v. Jaurequi, supra,* 234 Cal.App.2d 526, the plaintiff was riding as a guest in a vehicle that was struck from the rear by the defendant's car. There was a conflict in the evidence as to whether the car in which the plaintiff was riding had stopped suddenly or gradually, and regarding how long it was stopped before the collision. The reviewing court concluded that the trial court committed prejudicial error in failing to give a conditional res ipsa instruction. (*Id.* at pp. 527–528.) The court stated: "Had plaintiff's car been stopped, that is, stationary at the time of the collision and struck from the rear by defendant's moving vehicle, res ipsa loquitur would apply as a matter of law. [Citations.] Here, however*, the evidence is conflicting whether plaintiff's car was stationary* or whether it stopped suddenly and without warning." (*Id.* at p. 527, italics added.)

Here, unlike in any of the above cases, there is absolutely no evidence in the record that Ahluwalia's truck was stopped. On this record no reasonable juror could conclude that conditions two or three, of the res ipsa doctrine, had been established. When two moving cars collide, there are two instrumentalities involved, one of which is

not exclusively controlled by the defendant.  Contribution on the part of Ahluwalia was not ruled out in this case.  Accordingly, the trial court did not err in refusing to instruct the jury on the doctrine of res ipsa loquitur.  Nor did it err in denying Ahluwalia's motion for new trial.

### III.    DISPOSITION

The judgment and order denying new trial are affirmed.  Respondent Cruz is to recover costs on appeal.


_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Needham, J.